Jackson *v.* Cummings.

JAMES JACKSON, Appellant, *v.* WILLIAM CUMMINGS, Appellee.

#### APPEAL FROM PEORIA.

A return or report by the collector of taxes before the sitting of the court, to which it is by law directed to be made, will be good.

A certificate of publication stating that "the foregoing was duly published in the Peoria Democratic Press," &c., immediately following the tax list, will be held to refer to such tax list, and it will be presumed that the paper was a newspaper.

A specific or general judgment for costs is good; and a recital of the judgment as for an amount, including the costs, will be correct.

A difference of a quarter of a cent where all the particulars of a tax sale are truly described, with the judgment, so that the reference in the deed cannot be mistaken, will not vitiate.

Where the name of a patentee or present owner is not returned by the assessor, it will be presumed he was unknown to him.

While such letters or characters are used, under the statutes for the collection of taxes, as clearly convey their meaning, either as to description of land or amount of money, they will be sustained. As "$" for dollar; "tx" for tax, &c.

THIS cause was heard before PETERS, Judge, at March term, 1854, of the Peoria Circuit Court.

N. H. PURPLE, for appellant.

G. F. HARDING, for appellee.

SCATES, J. Ejectment for lot one, block ten, in Brimfield, Peoria county. Jackson deduced title from the United States to himself, and rested his case. The defendant, to show title, introduced a judgment for taxes, a precept, sale, and deed from the sheriff, and claimed to hold possession under this title. All the questions raised in this case, arise upon objections to the different parts of the proceedings in consummating this sale. First, to the judgment, precept, and deed: Because the judgment and precept are informal, illegal, and not in conformity with law, and the precept recites a different judgment, &c.; and also that the deed recites a judgment for 43¾ cents.

38 *

Jackson *v.* Cummings.

The description headings are as follows, viz.:

Of the judgment.

| Description. | Lot. | Block. | Tax. | Costs |
|---|---|---|---|---|
| " | 1 | 10 | $ C. M. 3 5 | 40 |

Of the precept.

Plaintiff offered the assessment and advertisement with these headings:—

| | Lot. | Blk. | Tax. | Costs. |
|---|---|---|---|---|
| " | 1 | 10 | $ C. M. 3 5 | Cents. 40 |

Assessment.

| Present Owner. | Descrip-tion. | Lot. | Blo. | Value. | Cts. M. | Cts. M. | Cts. M. |
|---|---|---|---|---|---|---|---|
| " | " | 1 | 10 | $5 | 1 | 2 | 5 |

Advertisement.

| Lt. | Bk. | Vl. | Tx. | Lt. | Blk. | Vl. | Tx. |
|---|---|---|---|---|---|---|---|
| " | " | $ " | C. M. | 1 | 10 | $5 | C. M. 3 5 |

Second objection is made to the sufficiency of the printer's certificate of publication, because it does not show it to have been made in a newspaper, &c. Third, to the collector's report, because it was returned by the recitals in the judgment, &c., on the 20th January, to the circuit court, — when there was no court, — the court not sitting until May.

None of these objections are well taken. To sustain them would extend the doctrine of technicalities to too great length, and one not demanded by the right of protection of the land-owner, and utterly subversive of the rights of the State. The court has already in Curry *v.* Hinman, 11 Ill. R. 427; Chesnut *v.* Marsh, 12 Ill. R. 176; Spellman et al. *v.* Curtenius, Ib. 414, 415, strongly discarded, as a class, all technical objections, which show no evil or injury to arise to the land-owner. The rights and interests of the State must not be lost sight of by a crusade of technicalities against the land-jobber, under the doctrine of strict construction and strict compliance with naked powers. That doctrine we admit, and will apply to the State, in the exercise of her right to collect her revenue by a fair sale of lands, so far as is necessary to protect the landholder against sacrifice by omissions of acts prejudicial to his rights. Of this, the court must judge in each case ; and by this standard we must resolve the objections urged here.

The third objection has been decided in effect, in Atkins *v.* Hinman, 2 Gilm. R. 450, in which the court held the statute directory in relation to a return or report by the collector five days before the sitting of the circuit court. If the time do not appear, the law will presume he did his duty in this respect. A literal compliance is not essential to the jurisdiction of the court. If the collector reports before the cause is heard and judgment pronounced, it is sufficient.

We judicially know the court sat in May. So we read and understand the recital of the collector's return on the 20th day of January, in the judgment, to be that he returned and filed it on that day, to the May term, and not as implying that it was to a court sitting in January. The law requires the return to be made to the first term of the court in the year, but we see no objection to its being done at a day previous, or on same day of its session.

The second objection to the printer's certificate is of the same character. It would require greater strictness than the "reasonable doubt" in criminal cases, to bring us to doubt the publication, in this certificate mentioned, being made in a "newspaper," as required by the 27th section of the revenue law. Following the usual caption, the above heading, and the usual notices, is the certificate "that the foregoing was duly published on the 15th January, 1845, in the 'Peoria Democratic Press,' published in Peoria county, Illinois, and that the number of transcripts, so published, corresponds with the number of newspapers printed and distributed for that week." Sitting in judgment upon the rights and property of the parties before us, we do not feel at liberty to indulge in nice grammatical constructions of the language, and technical speculations of the meaning of the certificate, which, as a whole, and in its connections, and under the law, we understand as saying that the list of lands and notices of the collector had been published and distributed on the day named in the newspaper published by them as editors. The word "foregoing," it is contended, grammatically refers to all the preceding articles in the paper as antecedents, and thus makes the certificate include all; grant it, still these are included, and *utile per inutile non vitiatur.*

So the "Peoria Democratic Press," it is said, may be a book, a monthly periodical, or a handbill, and not a newspaper; that the "number of transcripts so published" refers to other advertisements of copies, and not to this ta xlist, which is an original. We may read the advertisement and certificate so, as critical scholars, but knowing the statute under which such publications, are made, every one, lettered or unlearned, would understand

its proper connections, meaning, and object. This view applies equally to the first objection, which includes the recitals and observations. The case of Merritt et al. *v.* Thompson, 13 Ill. R. 723, fully answers the question of misrecital. A specific or general judgment for costs is good, and a recital of the judgment as for an amount, including the costs, will be correct. The tax was 3½ cents, and the costs 40 cents; all other particulars of this sale are truly described with the judgment, and we cannot mistake the reference in the deed being to it, notwithstanding the difference of a quarter of a cent in the amount; and to it the maxim, *de minimis non curat lex,* will apply.

Again, where the name of the patentee, or present owner, is not returned by the assessor, as required, or that he is unknown, we will presume that he was unknown to the assessor, as was done in relation to the time of return in 2 Gilm. R. 450.

The last point we notice is, the abbreviations in the assessment, judgment, precept, and advertisement. In Goodale *v.* Harrison, 2 Mo. R. 124, the court hold that the mark " $ " for dollar, is not a character known to the English language as a character to express a word or a part of a word, and sustain a demurrer to a declaration with damages alone expressed by that mark for dollar. They put the decision upon a statute requiring proceedings in court to be in the English tongue only, and " in words at length, and not abbreviated, except as abbreviations are now commonly used in the English language." The court say, " it would be idle to contend that this sign is an abbreviation of any word." The 18 Vermont R. 50, is also referred to as sustaining the same view of the mark " $ " not belonging to the English family of abbreviations for the word dollar. We have adopted the English common law by statute, but not the language; though it is that of our pleadings and common business. But we cannot follow the precedent of the Missouri court. I do not know the date of the Missouri statute, nor of the adoption of the mark " $ " as an abbreviation of " dollar " into common use in business transactions. On entering into business I found it domiciliated into the family of English abbreviations for the word " dollar," and never heard its claims questioned until now, nor its signification applied to any other word.

In Long *v.* Long, 2 Blackf. R. 293, the court hold a contract by note for " $ 120 " to be a valid contract for " one hundred and twenty dollars," and admissible in evidence, under the latter allegation, in a declaration.

Doubtless this court would have sustained the indorsed credit " 50 " on the note, in Gilpatrick *v.* Foster, 12 Ill. R. 357, as a

credit for fifty dollars, had the mark " $ " been a prefix.  We could not disregard it in a contract, nor do we see any reason to be ignorant of it in pleadings, though its use in the latter is not to be encouraged.

The other abbreviations are much of the same character, though some of them may stand for more than one word, when taken away from a contract.

The statute authorizes " letters and figures " to be used, as " they have heretofore been," to describe " townships, ranges, sections, parts of sections, and the year for which taxes are due, and the amount of taxes, interest, and costs."   Rev. Stat. p. 446, § 62.   " Letters and figures," not words and figures, were used in this case, and their use is not only here authorized after 1st Sept. 1845, but their past use referred to and sanctioned. We do not know what particular set, if any, had been in use. While such letters are used as clearly convey the meaning, either as to the description of parts of the lands or lots, as Lt for lot, Bk for block, Pt for part; or in regard to the amount due, as " $ " for dollar, " c," " ct," " cts " for cent, " m " for mills, " Tx " for tax, and " vl " for valuation, we shall feel no hesitation in sustaining them.   This question was in part before the court in Atkins *v.* Hinman, 2 Gilm. R. 444, and abbreviation sustained in its application to towns, ranges, and sections, and in regard to lots and fractional parts of lots, and again more fully in Blakeley *v.* Bestor, 13 Ill. R. 714.

*Judgment affirmed.*

Treat, C. J., dissented.