# Pittsburgh, Ft. W. & C. Ry. Co. v. Callaghan.

1. NEGLIGENCE—*Erection of Machines by Railroad Companies Near the Track.*—Railroad companies have no right to erect machines, for any purpose, so near the track that the slightest indiscretion on the part of the employes will prove fatal.

2. NEGLIGENCE—*A Question for the Jury.*—In the trial of an action for negligence, it is for the jury to decide who is negligent, and if both the plaintiff and whoever operated the cars, were negligent, then the comparison of the degrees of negligence was for the jury.

P., Ft. W. & C. Ry. Co. v. Callaghan.

3. EVIDENCE—*Of What Courts Take Notice.*—In an action to recover for an injury it appeared that the cars which caused the injury were propelled by a locomotive having on it a sign "Railroad Switching Association" and that the association was not a corporation but an association of several railroads. Who they were, was not proved. In such a case the general course of railroad business may be judicially noticed on the principle that courts will not pretend to be more ignorant than the rest of mankind.

4. RAILROADS—*Presumptions of Ownership of Locomotives.*—A locomotive is generally operated by the road to which it belongs, and it is a fair inference that if it is operated by an unincorporated association of railways, the owner of the locomotive is one of them.

5. EVIDENCE—*When Strong by Comparison.*—Weak evidence becomes strong by neglect of the party against whom it is put in, in not showing by means within his easy control, that the conclusion drawn from such evidence is untrue.

**Memorandum.**—Action for personal injuries. In the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Declaration in case; plea of not guilty; trial by jury; verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the October term, 1893, and affirmed. Opinion filed January 11, 1894.

The statement of facts is contained in the opinion of the court.

GEO. WILLARD and WM. E. MASON, attorneys for the appellant.

DUNCAN & GILBERT, attorneys for appellee.

OPINION OF THE COURT, GARY, J.

This is an action by the appellee as plaintiff below, for personal injury.

The only question in the case is whether the evidence justified a verdict for the plaintiff.

We extract from the brief of the appellant this description of the place at which the injury was inflicted, and of the course of business there:

"Morris & Company's packing house, where the injury happened, is situated on the northwest corner of what would be Loomis street on the east, and Forty-third street on the south, if those streets were cut through the grounds.

The southeast corner of the packing house was rounded off and a platform extended along the curved line reaching around on the south side of the building. Next to the platform was a railroad track upon which cars were placed and loaded from the packing house across the platform, and next south and easterly of this loading track lay another track, known as the Nelson Morris and Swift main track. Both tracks connected with tracks running north and south on the line of Loomis street.

South of these two tracks stood the Nelson Morris & Company tin shop, carpenter shop, glue house and other buildings belonging to the Nelson Morris & Co. plant. As a means of passage to and fro between these buildings and the packing house buildings, one or more bridges or viaducts were constructed over the tracks, but were not exclusively used, many of the employes being in the habit of crossing on a level with the tracks and climbing a ladder four or five feet high attached to the side of the platform, and when cars were in the way the employes were in the habit of going over, under or between them in making the passage.

The railroad cars were taken to and from the Morris & Company plant by means of locomotive engines, and the switching necessary to be done for the plant was done by the same means and on the two tracks above described. Such switching was of daily occurrence and was done in a manner usual and customary to that locality. For example, if there were cars on the platform track which were to be taken off and away, and such cars were mixed with other cars on the same track, then the locomotive was attached to the easterly end of the line and the track, in switchman's parlance, was "pulled," and the cars thrown alternately down upon one or the other of the two tracks, as was necessary to select out those desired. The engine did not keep hold of the cars until brought to a standstill, nor did the switchmen ride or follow them to point of stoppage, but they were given a reasonable momentum and cut off and allowed to run by themselves. In that way concussion between standing and moving cars took place with varying degrees of

force, and at points so far away from the engine as that its bell might or might not be heard.

This mode of switching had been followed at the Nelson Morris & Company plant, and on those two tracks, during the year and a half that the plaintiff had been employed there, next before the accident, and his testimony shows he understood it perfectly well."

The plaintiff was a carpenter employed by Morris & Company, and on the 26th day of October, 1889, in the course of his employment, had occasion to cross from the carpenter shop to the packing house. Instead of crossing by one of the bridges—which required climbing of stairs—he went on the ground, to cross the tracks. Two box cars stood upon a track and as he got to the west of them, some other cars were sent against them from the east, which sent them against the plaintiff and inflicted the injury.

A material circumstance in the case is whether the place of the injury was a public street where everybody had a right to go, or private grounds of anybody, and if so, whom.

The only testimony on that point is abstracted by the appellant as follows:

" I witnessed the accident from a covered bridge connecting the Nelson Morris Company tin shop with their canning establishment. The bridge crosses 43d street, and is about twenty-two feet above the ground, and over the railroad tracks.

Loomis street runs north and south on the east side of Nelson Morris' packing-house and 43d street runs east and west on the south side of the packing house. I was on the bridge looking out on what would be 43d street if it were opened.

At the time of the accident the plaintiff was going from the carpenter shop west on 43d street and crossed to a passage-way used by the employes across the tracks to the packing-house. The packing-house is built on a curved line, crescent shaped, around 42d to 43d streets. This passage-way crossed probably sixty feet west of Loomis street. The

passage-way led to a pair of stairs going up on the platform and from there into the packing-room.

The passage-way was probably used by an average of fifteen hundred employes a day, previous to the accident.

I noticed the plaintiff at the corner of the shop walking up 43d street."

The only words upon which to raise a doubt as to the place being a public street, are "what would be 43d street if it were opened," and what is to be understood by them is conjectural. Without those words the description is as definite as would be given of streets surrounding the court house, in a case where they were to be mentioned as a scene of action.

No question was made on the trial whether the place was a street or not. In support of the verdict it must be taken to have been a street.

It is proven that the plaintiff, before going behind the cars, looked along the south side of them to the east, but as the track curved away from his point of view, northward, he could see nothing.

If fifteen hundred employes crossed there daily, as was stated, the course of business as there pursued, had all the certainty of ultimate disaster spoken of in Lake Shore & Michigan Southern Ry. v. Johnson, 35 App. 430. And even if the place were not a public street, the principle of Chicago, Burlington & Quincy R. R. v. Gregory, 58 Ill. 272, might apply—that "railway companies have no right to erect machines, for any purpose, so near the track that the slightest indiscretion on the part of the employes, will prove fatal." It was for the jury to decide who was negligent, and if both the plaintiff and whoever operated the cars, were negligent, then the comparison of the degrees of negligence was for the jury, with little room to doubt the result.

The main reliance of the appellant is upon a supposed insufficiency of the proof that the cars that bumped the others against the plaintiff were sent by the appellant.

The proof is that those cars were sent by a locomotive, No. 39, of the appellant; that it had on it a sign, "Railway

Switching Association;" that the association was not a corporation, but an association of several railroads, but who they were, was not proven.

In such a case the general course of business may be judicially noticed on the principle quoted in Fisher v. Jansen, 30 Ill. App. 91, that "courts will not pretend to be more ignorant than the rest of mankind."

A locomotive is generally operated by the road to which it belongs, and it is a fair inference that if it is operated by an unincorporated association of railways, the owner of the locomotive is one of them.

Weak evidence becomes strong by the neglect of the party against whom it is put in, in not showing by means within the easy control of that party, that the conclusion drawn from such evidence is untrue.   Great Western R. R. Co. v. Bacon, 30 Ill. 348; Germ. Fire Ins. Co. v. Klewer, 129 Ill. 559.

The judgment is affirmed.