R. M. HOWELL v. J. MANDELBAUM & SONS, Appellant.

**Negligence:** INJURY TO PEDESTRIAN: SUBMISSION OF ISSUES: EVIDENCE.
1  In this action for injury to plaintiff from being struck by a delivery wagon when the horse hitched to the same was not under the control of its driver, evidence simply that the horse stopped and then started at a high rate of speed as the driver went to his head to start him, did not authorize submission to the jury of either the vicious character of the horse, or defendant's alleged negligence in permitting the driver to handle him, or that of the driver in leaving his seat and going to the horse's head to start him.

**Same.** In permitting the horse to start rapidly while the driver was
2  on the ground, and in failing to seize the reins after springing into the wagon and thus gain control of the horse, would have authorized the jury to find the driver negligent, and this issue was properly submitted.

**Same:** WHAT CONSTITUTES DRIVING HORSES. One may be driving a
3  horse faster than an ordinary and moderate gait, in violation of a city ordinance, though not at the time holding the reins; as where the driver while on the ground started the horse on the run and after getting into the wagon made no effort to seize the reins and control the animal.

**Same:** EVIDENCE: HEARSAY. Before the declarations of a member of
4  a firm are binding upon the firm, it must appear that he had power to act for his principal, and that his act was within the scope of his authority. Thus plaintiff's testimony that she was told that the horse and wagon which struck and injured her belonged to the defendant, a corporation, was not admissible, in the absence of evidence that her informant was an agent or officer of defendant and had authority to speak.

**Same:** OWNERSHIP OF PROPERTY: EVIDENCE: PRESUMPTIONS:    Where it appeared that defendant was engaged in the mercantile business and the vehicle by which plaintiff was struck and injured was a delivery wagon with defendant's name painted thereon, while possibly but slight evidence of ownership, was sufficient to make a *prima facie* case, and in the absence of any showing to the contrary, to take the issue of ownership to the jury; and it will also be presumed that the person in possession of the wagon at the time of the accident was acting for the owner rather than for himself.

*Appeal from Polk District Court.*—HON. HUGH BRENNEN, Judge.

MONDAY, MARCH 17, 1913.

FROM a judgment against it for damages, the defendant appeals.—*Reversed.*

*H. L. Bump* and *Parsons & Mills,* for appellant.

*S. B. Allen,* for appellee.

LADD, J.—The defendant is a corporation operating a retail dry goods store in Des Moines, and damages are claimed of it because of a collision of a horse and delivery wagon with plaintiff while attempting to cross a street. It appears that a boy about nineteen years old was driving a horse hitched to a delivery wagon south on Fifth street, when it stopped about halfway between Locust street and Grand avenue, or one-third the way north of Locust street, and, though urged, would not start. It was allowed to stand a few minutes, when the boy got out of the wagon and went to the horse's head. Thereupon it lunged forward, partly trotting and partly galloping. The boy sprang into the wagon again, but did not seize the reins, which hung from the top of the wagon, and, as the horse ran south, the wagon shaft struck plaintiff in the back when about ten feet north of the south line of Locust street, causing her to fall, and the wagon ran over her.

The petition alleged many grounds of negligence which were thus summarized by the court in stating the issues:

That said horse was unruly, vicious, balky, and was an unfit horse to be driven upon the streets of Des Moines, and that defendant was negligent in permitting said horse to be driven on said street at said time and place; that defendant was negligent in employing and permitting a boy to drive said horse; that said boy was negligently driving said horse; that the horse balked with said boy, and the boy negligently left his seat and got from the wagon and went to the head of the horse and negligently started same and negligently made no effort to stop the same, but jumped into the wagon and negligently let said horse run across said intersection at a dangerous rate of speed, and in violation of the city ordinance; that, after said boy had negligently started said horse at a high rate of speed, he negligently, willfully, wantonly, and recklessly made no effort to gather said lines or stop said horse, but let same go at will until it struck and injured plaintiff as aforesaid.

The court submitted all these issues to the jury, though, as contended by appellant, there was no evidence of the vicious character other than that he stopped as stated and a witness had seen it do so once before. From this circumstance alone, it was not to be inferred that defendant was negligent in allowing the horse to be driven on the streets, nor, for that matter, the boy to drive it, and the court erred in submitting this issue to the jury. *Yeager v. Railway,* 148 Iowa, 231. Nor does it appear that, in leaving his seat in the wagon and going to the horse's head, there was any want of care.

1. NEGLIGENCE: injury to pedestrian: submission of issues: evidences.

But in causing or allowing the horse to start off rapidly while he was on the ground and in not seizing the lines immediately after springing in the wagon and regaining control of the horse so as to avoid the collision, the jury might have found the boy to have been negligent, and this issue was rightly submitted to the jury.

2. SAME.

An ordinance of the city prohibited any one from driving along the street "faster than an ordinary or moderate gait, except in cases of urgent necessity," and it is contended the evidence was not such as to have warranted the submission to the jury whether the driver violated the ordinance. The evidence was such that it might have been found that the horse crossed the intersection of two well-traveled streets in the business portion of the city, and, if the driver can be said to have been driving, the issue was properly submitted. According to the lexicographers, "drive" means to compel or urge to move in some manner or direction. How this shall be done is not controlling. One may drive a team with or without holding the lines, and if the boy by going to the horse's head started him on the run, and though getting on the wagon did not restrain him by seizing the reins, and voluntarily allowed it to continue down the street "faster than an ordinary or moderate gait," he was driving in violation of the ordinance. The issue was rightly submitted to the jury.

3. SAME: what constitutes driving horses.

II. The plaintiff was asked:

Do you know whose horse and wagon this was that ran over you? A. J. Mandelbaum & Sons. (Defendant objected to the question and moved to strike the answer out as the conclusion of the witness.) Court: You may tell yes or no. A. Yes, sir. Mr. Allen: Whose horse and wagon was it? A. Mandelbaum & Sons. (Cross-examination): Q. Did you see that horse that struck you? A. No, sir; I didn't. Q. You did not see him before or after he struck you? A. No, sir. Mr. Parsons: I now move to strike from the testimony of Mrs. Howell her evidence as to whose horse it was, because it was necessarily based upon hearsay, and she did not see the horse. Court: It must have been entirely by hearsay. Mr. Allen: No, it was not. Court: Then show what it was. Mr. Allen: It would not be hearsay if it was by admission. Court: It would be hearsay unless she knew herself. Witness: If Mr. Mandelbaum told me it was, wouldn't that be admissible from him? (Defendant moves to strike out the testimony as to what

4. SAME: evidence: hearsay.

Mr. Mandelbaum said as immaterial and being a conclusion.) Mr. Allen: How do you know that was J. Mandelbaum's horse? A. Mr. Morris Mandelbaum told me it was and that he was very sorry for it. (Defendant moves to strike out the testimony as incompetent and immaterial for any purpose.) Court: Who is Mr. Morris Mandelbaum? (Objected to by the defendant.) A. He is Mr. Mandelbaum's brother, J. Mandelbaum's son. Mr. Allen.: Is he the one of the sons referred to? A. Yes, sir; he is one of the sons referred to in J. Mandelbaum & Sons. Q. Did you do business with them? A. I have paid them hundreds of dollars. Q. Do you know them all? A. I am not as well acquainted with this gentleman as I am with the younger brother. Q. It was one of the members of the firm that told you? A. Yes, sir; one of the members of the firm that came to my home. Mr. Parsons: I move to strike out the testimony of this examination as incompetent and for the reason it is not binding on this defendant. (Overruled, and defendant excepts.)

The petition alleged, and the answer admitted, that defendant was a corporation. As such, it necessarily acts through its authorized agents or employees. For all that appears, Morris Mandelbaum may have been one of the "Sons" included in the corporate name, but have had no connection whatever with the corporation itself. Before the declarations of an agent are admissible, the party offering to prove them must, at least, give some evidence tending to show that he had the power to act for his principal in relation to the matter in hand and that the same was within the scope of his authority. *Armil v. Railway,* 70 Iowa, 130; *Livingston v. Railway,* 35 Iowa, 555; *Verry v. Railway,* 47 Iowa, 549; *Wood Mowing & Reaping Machine Co. v. Crow,* 70 Iowa, 340; *Phelps v. James,* 86 Iowa, 398. For the reason that there was no evidence that Morris Mandelbaum was an agent or officer of defendant, or, if such, was acting within the scope of his employment, the motion to strike out the testimony of what he had said should have been sustained.

III.   The defendant was engaged in the retail mercantile business, and the vehicle in question was a delivery wagon.

Two witnesses testified the name ''Mandelbaum'' was on the wagon; another thought ''J. Mandelbaum''

5. SAME: owner-
   ship of prop-
   erty: evi-
   dence: pre-
   sumptions.

thereon; and it was elicited from another that the name on the wagon was ''J. Mandelbaum & Sons.'' If either of the former, it is apparent that the name on the wagon would furnish but slight, if any, evidence of ownership, and, standing alone, would be insufficient because of want of identity of names on which to base a finding that the property belonged to defendant. If, however, the name of the defendant was painted on the wagon, as testified by the witness on cross-examination, it was to be inferred that the wagon belonged to defendant and the driver was handling the rig on its account. From identity of names identity of persons or corporations is to be inferred, and the wagon was such a one as retail merchants make use of in the transaction of their business. It is improbable that other than the owner would inscribe his name on a delivery wagon, and, as the wagon was one appropriate to defendant's business, a *prima facie* case was made out by this proof. The name on tools or vehicles and articles generally is commonly accepted as indicating ownership, and, though not of much probative weight, it is enough, in the absence of evidence to the contrary, to carry the issue to the jury. This rule is not unreasonable, for, if the inference is not correct, no one ordinarily is in a better situation to establish the fact than the party so named.

In *Ryan v. Railway*, 60 Ill. App. 612, the only evidence of the ownership of an engine was that it bore the letters ''B. & O.,'' and this was held enough to sustain a finding that it belonged to the Baltimore & Ohio Railway Company; the court saying: ''Initials of railroad companies get to be as well known to the general public as the abbreviations which indicate the location of land under congressional survey. *Jackson v. Cummings*, 15 Ill. 449. From Lake Michigan to the Atlantic 'B. & O.' on an engine mean Baltimore & Ohio Railroad Company, without regard to the track it is upon or

yard it is in, and that those letters could be found upon an engine not belonging to that company, nobody could be made to believe. The facts as to usage of railroads in that regard are as well known as the custom of which Caton, J., said, in *Munn v. Burch,* 25 Ill. 35, that 'courts will not pretend to be more ignorant than the rest of mankind,' which remark we applied to apartment houses in *Fisher v. Jansen,* 30 Ill. App. 91, affirmed 128 Ill. 549 (21 N. E. 598). If the engine was owned by the company, there is presumption that it was operated by that company. We so held in *Pittsburg, Ft. W. & C. Ry. v. Callaghan,* 50 Ill. App. 676." To the same effect, see *East St. Louis Connecting Ry. Co. v. Altgen,* 210 Ill. 213 (71 N. E. 376); *Pittsburg, Ft. W. & C. Ry. Co. v. Callaghan,* 157 Ill. 406 (41 N. E. 909).

In *Schulte v. Holliday,* 54 Mich. 73 (19 N. W. 752), evidence that the name of the defendant firm was upon the wagon at the time of the injury was held to be admissible "to identify the horse and vehicle used by defendant at the time." In *Edgeworth v. Wood,* 58 N. J. Law, 463 (33 Atl. 940), the complainant was run over by a wagon, and it was contended, as disclosed in the opinion that there was not:

Sufficient evidence that the driver of the horses which collided with plaintiff was the servant or agent of the express company, for whose negligence the company would be liable. Upon this subject the evidence shows that the United States Express Company was engaged in the business of transporting express matter over railroads running out of Hoboken, and also railroads running out of Communitaw. It maintained a stable in the vicinity of the place at which plaintiff was injured, in which were stabled the horses which drew over one hundred wagons belonging to the company. These wagons were painted in peculiar colors, and had upon their sides the name of the company and a device, which one of the witnesses called its 'trade-mark.' All the witnesses who saw the accident and noticed the wagon which ran over plaintiff unite in declaring that it was painted as were the wagons of the company, and that it was marked with the company's name and

device. Considering the great improbability that any other owner of a wagon would thus paint and mark it, a plain inference could be drawn from the evidence that the wagon in question was in the ownership of the company. If that inference be drawn, it is sufficient to establish *prima facie* that the wagon, being owned by the company, was in its possession, and that whoever was driving it was doing so for the company. In an action for an injury to a boat of plaintiff by a collision with a barge, there was evidence that the barge was marked by the defendant's name and number, and it was contended that this was not sufficient to show that it was navigated by defendant's servant, as it might have been taken by some one else or have been on hire. But Lord Denman, at *nisi prius,* held that the fact that the barge was owned by defendant was *prima facie* evidence that the bargeman was his servant, and cast on defendant the burden of proving it was otherwise controlled. *Joyce v. Capel,* 8 Car. & P. 370. Proof of the ownership of a pair of runaway horses in defendant was held in New York to be sufficient to justify a jury in finding the persons who were in charge of the horses when negligently permitted to escape were defendant's servants. *Norris v. Kohler,* 41 N. Y. 42. A like view was taken in *Svenson v. Steamship Co.,* 57 N. Y. 108.

In *Norris v. Kohler,* 41 N. Y. 42, the decedent was run over by a team of which defendant was owner, and it was contended that from this a presumption arose that "it was in use for his benefit and on his account," and on this subject the court said: "This argument, I think, is a sound one. The ownership of personal property draws to it the possession. The owner is entitled to have and to keep possession, and no other person can justly obtain possession until some act of authority from the owner is proved. Ownership implies possession, and possession is in subordination to title. No proof was given in the present case, separating the ownership from the possession, and the presumption of law is that the wagon and horses of the defendant were in use in his service, and on his account."

Whether a different rule would obtain in case of an auto-

mobile need not now be determined, but see *Trombley v. Stevens-Duryea,* 206 Mass. 516 (92 N. E. 764).

Certain it is that from proof that the driver is in possession in the absence of anything more, it will be presumed that he is there with the assent of the owner and not wrongfully, as intimated in the last-cited case. And we are of opinion that, in such a situation, it is inferable that therein he is acting for the owner rather than for himself as borrower or hirer. Such would be the conclusion ordinarily drawn, and, though not of much weight, we are of opinion that it was enough to carry the issue to the jury.

For the reasons stated, there was no error in overruling defendant's motion for a verdict.

For the errors pointed out, the judgment is *Reversed.*