John F. Devine, Administrator, Appellee, v. The Chicago, Rock Island & Pacific Railway Company, Appellant.

## Gen. No. 18,885.

1. COMMERCE, § 3*—*what to be proved in action under Federal Employers' Liability Act.* In an action under the Federal Employers' Liability Act for the wrongful death of an employe, it is necessary for plaintiff to show that deceased was killed while defendant was engaged in interstate commerce and while deceased was employed in such commerce.

2. COMMERCE, § 4*—*what sufficient to show prima facie that decedent was engaged in interstate commerce.* In an action for the wrongful death of a switchman caused by a fall from a train upon its being suddenly stopped, the evidence was held sufficient *prima facie* to bring the case within the Federal Employers' Liability Act.

3. COMMERCE, § 4*—*how fact that employe was engaged in interstate commerce may be proved.* In an action under the Federal Employers' Liability Act for the wrongful death of an employe, the fact that decedent was at the time of the accident engaged in interstate commerce may be established by direct or circumstantial evidence, and defendant cannot attack the weakness of plaintiff's evidence by contending that records in its possession which plaintiff did not introduce in evidence would have shown the destination of the cars in the train inflicting the injury.

4. EVIDENCE, § 40*—*when failure to introduce evidence creates presumption against party.* In an action under the Federal Employers' Liability Act, the failure of defendant to introduce records in its possession which would have shown whether the train on which decedent was employed at the time of the accident, or any of the cars therein, was then engaged in interstate commerce creates a presumption against it.

5. MASTER AND SERVANT, § 177*—*when evidence sufficient to show negligence of engineer to stopping train suddenly.* In an action un-

der the Federal Employers' Liability Act for the wrongful death of a switchman, the evidence was *held* sufficient to sustain plaintiff's contention that the accident was caused by the negligence of the engineer in stopping the train with great force and violence thereby throwing decedent to the ground.

6. MASTER AND SERVANT, § 349*—*when negligence of fellow-servant not an assumed risk.* In an action under the Federal Employers' Liability Act for the wrongful death of a switchman caused by the negligence of the engineer in suddenly stopping the train with great force and violence, the doctrine of assumed risk is inapplicable.

7. MASTER AND SERVANT, § 206*—*when fellow-servant doctrine inapplicable.* In an action under the Federal Employers' Liability Act, the fellow-servant doctrine is inapplicable.

8. MASTER AND SERVANT, § 801*—*when instruction in language of statute not erroneous.* In an action under the Federal Employers' Liability Act, an instruction in the language of the section of the act upon which recovery was sought is not erroneous as permitting recovery on proof of negligence other than that charged, particularly where other instructions confined the jury to the negligence charged.

9. MASTER AND SERVANT, § 801*—*when instruction in language of statute need not include entire act.* In an action under the Federal Employers' Liability Act for the wrongful death of a switchman, an instruction in the language of the section of the act upon which a recovery was sought is not erroneous because another section of the act upon which no reliance was placed was not included therein.

10. MASTER AND SERVANT, § 98*—*effect of Federal Employers' Liability Act.* The Federal Employers' Liability Act supersedes all State laws on the subject.

11. DEATH, § 51*—*when statutory restrictions on amount of recovery inapplicable.* Since the provisions of the Federal Employers' Liability Act limiting the right of recovery in actions for wrongful death to the pecuniary damages actually sustained by the next of kin of decedent place no arbitrary limit upon the amount recoverable, recovery may be had for the full pecuniary damages actually sustained by the next of kin independently of restrictions imposed by State laws on the amount of the recovery in such cases.

12. DEATH, § 67*—*when verdict not excessive.* In an action under the Federal Employers' Liability Act for the wrongful death of a switchman thirty-seven years of age at the time of his death, a verdict for $15,000 was *held* not to be excessive.

Appeal from the Circuit Court of Cook county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Affirmed. Opinion filed March 26, 1914. *Certiorari* granted by Supreme Court.

**Statement by the Court.** This is an appeal brought by the appellant, The Chicago, Rock Island & Pacific Railway Company, hereinafter referred to as the defendant, to reverse a judgment for $15,000 in an action on the case, entered in the Circuit Court of Cook county, Illinois, in favor of John F. Devine, administrator of the estate of William J. Mason, deceased, appellee, hereinafter referred to as the plaintiff. The suit was brought under the Federal Employers' Liability Act of 1908. The declaration consisted of one count. In substance, it alleged that in the lifetime of the plaintiff's intestate, prior to and on, to wit, the 20th day of June, 1910, the defendant owned, possessed and operated a certain railroad which extended, among other places, from Chicago, Cook county, Illinois, into and through a part of another State or States, and it was then and there a common carrier by railroad, and as such was then and there engaged upon, by and in connection with its said railroad in commerce between the several States; that the deceased was then and there, and at the time of his injuries and death hereinafter complained of, employed by the defendant in such commerce as a switchman, to work and switch with a certain engine and certain cars which it was then and there operating upon its said railroad in its said business; that at the time aforesaid, and at, to wit, in the vicinity of 105th and 106th streets in Chicago, in the county and State aforesaid, defendant was operating a certain switching train, being drawn by a certain locomotive upon and along one of the tracks of its said railroad, and the deceased, in the discharge of his duty as such switchman, was then and there standing on top of one of the cars of said train, and while deceased was so standing upon said car, and while he was exercising ordinary care and caution for his own safety, the defendant's engineer, who was then and there in charge of the operation and management of said engine, then and there wrongfully and negligently caused said train to be stopped with great and unusual sud-

denness, force and violence, and as a direct result, and in consequence of said manner in which said train was so stopped, the deceased was thereby then and there thrown from the said car of said train upon which he was riding as aforesaid, to and upon the track there, and he thereby then and there sustained such serious bodily injuries that he died as a result thereof within a short time, to wit, within an hour after said accident, in the County and State aforesaid; that the deceased left him surviving his widow and a minor son, his only next of kin; to the damage of the plaintiff, as administrator aforesaid, of $20,000.

William J. Mason, deceased, was thirty-seven years of age at the time of the accident in question, and was working for the defendant as a head switchman in a crew consisting of an engineer, fireman, conductor, hind switchman and head switchman. It was the work of this crew to do miscellaneous switching in the yards of the defendant; it was also its duty to make deliveries of cars to various industrial plants and also to the yards of other railroad companies and to bring back from these industrial plants and from the yards of the other railroad companies cars to the yards of the defendant. It was stipulated between the parties to the suit that the defendant Company was a common carrier, engaged in both interstate and intrastate traffic at the time of the accident; that it was a railroad that extended through part of Illinois and through several of the western States; that the proportion of the mileage of the company in Illinois as compared with the mileage outside of Illinois is as one to five or six; that the defendant Company had about 6,000 or 7,000 miles of railroad altogether; that over that road it operated as a common carrier, hauling both freight and passenger cars; that some trains consist entirely of cars engaged in intrastate business and some entirely of cars engaged in interstate business; that some

trains contain both intrastate cars and interstate cars; that it hauled its intrastate and interstate cars over the same tracks. On the morning of the accident the crew in question, with an engine, had proceeded north-ward from the defendant's yards at Blue Island to 103rd street on the defendant's railroad, a distance of about two miles. At this point (Washington Heights) the yards of the Pan Handle Railroad Company are located,—a little north of 103rd street and just west of the defendant's railroad. There is a lead track that connects the two roads. After the crew had performed certain switching duties in the neighborhood of 103rd street, it lined up two strings of cars in the yards of the Pan Handle Company to take back to the yards of the defendant at Blue Island. One string consisted of twenty-three cars and was standing in the Pan Handle yards on what was known as the middle track, and the other string, consisting of twenty-two cars, was lined up on the track just west of the middle track, this track being known as the lead track. The engine was coupled on to the twenty-three cars that were lined up on the middle track and the air brakes on all of these cars were connected up with the engine. The engine with the twenty-three cars attached then pulled south over a switch and then backed on to the lead track, where the twenty-two cars were standing; these cars were then coupled on to the train, but the air brakes were not "cut in" on them; the engine then pulled south with the train out of the Pan Handle yards and on to the defendant's railroad. Just as the last car on the train had cleared the switch that admitted the train to the defendant's railroad the train was stopped and the jar of the stop caused the deceased to be thrown from the top of the car upon which he was standing and he fell between two cars to the ground and was killed.

M. L. BELL and A. B. ENOCH, for appellant.

JAMES C. MCSHANE, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

The defendant first contends that the Federal Employers' Liability Act of 1908 is not applicable to the facts in this case. Section 1 of said act provides: "That every common carrier by railroad, while engaged in commerce between any of the several States * * * shall be liable in damages to any person suffering injury, while he is employed by such carrier in such commerce or in case of the death of such employee, to his or her personal representative for the benefit of the surviving widow or husband or child of such employee; * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier." To bring the present case within the application of this act it was necessary for the plaintiff to show that the deceased was killed while the defendant Railroad Company was engaged in interstate commerce and while deceased was employed in such commerce. *Pederson v. Delaware, L. & W. R. Co.*, 229 U. S. 146. We have carefully examined the evidence bearing upon this branch of the case, and we are satisfied that the plaintiff made a *prima facie* showing that the case was one that came within the provisions of the act in question. Defendant argues at length that the evidence of the plaintiff on this subject was of a very weak character and it complains that while there were records by which the origin and the destination of the cars in the train in question could be conclusively proven, the plaintiff did not see fit to introduce these in evidence. We know of no rule of law that required the plaintiff to introduce these records in evidence. The plaintiff had the right to prove this branch of his case, like any

other branch, by direct or circumstantial evidence. The records referred to by the defendant were in its possession, and the fact that it did not produce them in rebuttal of the evidence introduced by the plaintiff greatly strengthened the plaintiff's proof on this branch of the case. "Weak evidence becomes strong by the neglect of the party against whom it is put in, in not showing by means within the easy control of that party, that the conclusion drawn from such evidence is untrue. *Great Western R. R. Co. v. Bacon,* 30 Ill. 348; *Germania Fire Ins. Co. v.* Klewer, 129 Ill. 559 [599]." *Pittsburgh, Ft. W. & C. Ry. Co. v. Callaghan,* 50 Ill. App. 676. While the defendant hotly contested its liability in the case, it saw fit not to introduce the records bearing on the question of the origin and the destination of the cars in the train in question. The presumption to be drawn from this fact is obvious.

The defendant next claims that "the court erred in holding that there were any facts in evidence from which the negligence of the engineer could be reasonably and legitimately inferred." On the trial the defendant's theory of the accident was that the train was moving slowly and that immediately prior to the stopping of the same the deceased had signalled for the train to stop, so that he or others of the train crew might "cut in the air" on the twenty-two cars that had just been coupled to the train; that the engineer, acting on the signal to stop, stopped the train in an ordinary and proper way; that the deceased knew that it was customary to stop the train at the place in question to permit him and other members of the train crew to "cut in the air" on cars not connected up with the air-brake system; that if there was jarring and bumping of any cars when the train was stopped, that caused the deceased to fall from the car on which he was standing, it was limited to the rear twenty-two cars that had not been "cut in on the air"; and it was not caused by the manner in which the train was stopped by the

engineer, but it was due entirely to the fact that no air had been "cut in" on these cars. The theory of the plaintiff was that the train (moving at the rate of five or six miles an hour) had just passed the switch that led from the Pan Handle yards to the track of the defendant Company; that the rear switchman was closing the said switch; that the deceased, standing on one of the cars, gave a signal to the engineer to shut off steam and to allow the train to drift along so that the rear switchman would have time to close the switch and to run after and catch the train; that it was not customary to stop the train at the place in question for the purpose of "cutting in air" on the cars; that the stop was an unexpected one and it was made with most extraordinary and unusual force and violence. In our opinion, the weight of the evidence sustains the theory of the plaintiff. We certainly cannot hold, as defendant requests us to do in its present contention, that "the court erred in holding that there were any facts in evidence from which the negligence of the engineer could be reasonably and legitimately inferred."

The defendant next contends that the accident was brought about "by one of the ordinary risks, hazards and dangers of the employment of the deceased." This contention is necessarily based upon the assumption that the negligence charged in the declaration was not proven. If our conclusion that the accident was caused by the negligence of the engineer is justified by the proof, it logically follows that there is no merit in the present contention. In a case like the one before us, the fellow-servant doctrine does not apply (*Mondou v. New York, N. H. & H. R. Co.*, 223 U. S. 1), and the defendant is chargeable with the negligence of the engineer. The deceased did not assume the risk or danger occasioned through the negligence of the engineer, and such risk or danger could not be termed one of the ordinary risks or dangers of the employment of the deceased.

The defendant next contends that the court erred in giving to the jury, on behalf of the plaintiff, the following instruction: ''The court instructs the jury that prior to and on the 20th day of June, 1910, there was a certain act of Congress in full force and effect, which provided, among other things, as follows: 'That every common carrier by railroad, while engaged in commerce between any of the several States, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employe, to his or her personal representative for the benefit of the surviving widow or husband or children of such employe, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employes of such carrier.' Said act also provides: 'That any and all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employe, or where such injuries have resulted in his death, the fact that the employe may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employe.' '' The defendant contends that this instruction authorized the jury to find a verdict for the plaintiff if the jury found, from the evidence, that the death of the deceased resulted from any negligence of any officers, agents or employes of the defendant, whereas to warrant a verdict of guilty it was necessary for the plaintiff to prove that the defendant was guilty of the specific negligence charged in the declaration, viz., that the engineer caused the train to stop with great and unusual suddenness, force and violence. We do not think that there is any merit in this contention. The part of the instruction that is criticised does not direct a verdict,—it merely gives the law upon which the claim of the plaintiff is predicated. The Supreme Court of this State has frequently

said that it is not error to lay down the law in the language of the law itself, unless there is something in the instruction calculated to mislead the jury in the application of the law to the particular case. *People v. McIntosh*, 242 Ill. 606; *People v. Cotton*, 250 Ill. 343. It is a common practice to give instructions of this character in cases of this kind, and when all of the given instructions in this case are considered together, it is clear that the instruction complained of (*one that does not direct a verdict*) could not have prejudiced the defendant in this case. One of the instructions given to the jury contains the following language: "The instructions given to the jury are and constitute one connected body and series, and should be so regarded and treated by the jury; that is to say, they should apply them to the facts as a whole and not detach or separate any one instruction from any or either of the others." The court gave to the jury, at the instance of the defendant, the following instruction: "*The defendant is not liable for any negligence except that charged in the declaration.*" Another instruction, given at the instance of the defendant, contains the following language: "Before the plaintiff can recover he must prove first that the defendant was guilty of the negligence *charged against it in the declaration.*" Still another of defendant's instructions contains the following language: "The burden of proof is on the plaintiff to show what degree of care Mason was exercising for his own safety. If plaintiff proves that Mason was not negligent at all and that the negligence of the defendant *charged in the declaration* was the proximate cause of Mason's injury, then you should award, etc." The defendant claims that the jury might have understood from the instruction in question, as applied to the evidence in the case, that the law was, that if they believed from the evidence that any employe of the defendant was negligent in not coupling up the air in the entire train before it went out on the main line, or in not providing a means for coupling in

the air before it started out, and that the deceased was killed by reason thereof, that then the defendant was liable. We find nothing in the record to warrant us in finding that the jury could have been so misled by the instruction. We find that the jury were given, at the instance of the defendant, the following instruction: "The court instructs you that under the evidence in this case the defendant was not required to have the air coupled up on the movement being made at the time Mason was injured." The defendant contends that even if it was proper for the court to give an instruction in the language of the act, it was not proper to pick out particular portions of the act and to omit other portions. Defendant complains that the language in section 4 should have been added to the instruction. Section 4 of the act reads as follows: "Section 4. That in any action brought against any common carrier under or by virtue of any of the provisions of this act, to recover damages for injuries to, or the death of, any of its employes, such employe shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employes contributed to the injury or death of such employe." The case of the plaintiff was not predicated upon section 4, and it would not have been proper to have added the said section to the instruction. Had section 4 been added to the instruction, the defendant might, with some warrant, have argued that the giving of the same was misleading and improper.

The defendant next contends that the court erred in entering judgment for $15,000. The position of the defendant seems to be that even if it be conceded that Congress had the power to fix the amount that might be recovered in a case of this character, that it has not done so, and that, therefore, the law of this State must govern on the question of damages, and that in no event could a larger amount be recovered in this

case than $10,000, the maximum amount allowed in this State in a case of this character. There is no merit in this contention. The plaintiff's action is predicated upon the Federal Employers' Liability Act of 1908, and we have already held that the facts of the case bring it within the act. The provisions of this act supersede all State laws upon the subject. *Mondou v. New York N. H. & H. R. Co.*, 223 U. S. 1; *Missouri K. & T. Ry. Co. v. Wulf*, 226 U. S. 570; *Michigan Cent. R. Co. v. Vreeland*, 227 U. S. 59; *St. Louis, S. F. & T. R. Co. v. Seale*, 229 U. S. 156. The Federal Act in question limits the right of recovery in this case to the pecuniary damages actually sustained by the next of kin of the deceased (*Michigan Cent. R. Co. v. Vreeland*, 227 U. S. 59), but it does not place any arbitrary limit on the amount that may be recovered. Plainly it would seem to be the intention of the act that recovery may be had for the *full* pecuniary damages actually sustained by the next of kin.

The defendant next contends that the damages awarded are excessive. We have carefully examined the evidence bearing upon this question, and we cannot say that the finding of the jury as to the amount of damages is manifestly against the weight of the evidence.

Finding no error in this record, the judgment of the Circuit Court is affirmed.

*Affirmed.*