### HOME INS. CO. v. KLOUS et al.

### No. 3973.

Court of Civil Appeals of Texas. Amarillo.

March 1, 1933.

Rehearing Denied March 22, 1933.

C. D. Russell, of Plainview, for appellant.

Williams & Day, of Plainview, and Dennis Zimmermann, of Tulia, for appellees.

HALL, Chief Justice.

The appellee Klous had about 2,000 acres of land in Swisher county planted to wheat in 1930, and on the 29th day of April of that year he executed to the appellant company a mortgage note in the sum of $1,929.90, which recites that it is given in consideration for hail insurance on his crop of wheat then growing on certain lands in Swisher county. A mortgage lien is acknowledged to secure the note, which further recites, in part: "If any attempt shall be made to sell or remove said crop or any part thereof before the full payment of this note (permission, however, granted to sell not to exceed 25% of the above crop for the purposes of

paying this note and harvesting expenses) this note shall at once become due and payable," etc.

Prior to the execution of this instrument, Klous was indebted to the First National Bank of Plainview, and there appears in the record a stipulation of counsel to the effect that the First National Bank in Plainview took over all the assets and assumed the liabilities of the first-named bank on August 30, 1930. The note was not paid to plaintiff when due on the 15th day of July, 1930, and this suit was instituted against Klous to recover the amount of the mortgage note, less two credits thereon aggregating about $550. The First National Bank in Plainview was made a party defendant upon the grounds alleged as follows:

"That at the time the note was executed, a mortgage was given to appellant by Klous on the insured wheat to secure the payment of the note but that at some time prior thereto Klous had executed a mortgage on the same wheat to the First National Bank of Plainview. That before accepting the note and issuing the hail insurance policy, the appellant required and defendant bank executed the following waiver:

" 'This mortgage waiver to apply to application of Foster Klous of Tulia, Texas, assured. For and in consideration of loss payable clause attached to policy No. 75,756 in Home Insurance Company of New York, First National Bank, Plainview, Texas, mortgagee, hereby. consents that the mortgage given to Home Insurance Company of New York, N. Y., for $1929.90, shall be a first and prior lien on the crop described in said policy and in the event we take the property or proceeds thereof to satisfy our claim, we agree to protect said Home Insurance Company or its assignees.

" 'The Plainview National Bank,
" 'Plainview, Texas,
" 'By R.; A. Underwood,
" 'Vice President.' "

That said waiver was executed and delivered to appellant in order to induce it to insure the wheat crop of said Klous against loss by hail with loss payable clause in favor of said bank.

The petition then alleges the fact that the First National Bank in Plainview was incorporated and took over the assets and assumed the liabilities of the bank described in the foregoing waiver, and that said bank had knowledge of all the facts alleged; that, after the wheat had been harvested, the defendant bank caused it to be sold and disposed of and acting through its duly authorized officer, Guy Jacobs, vice president, induced and caused Klous to pay to it the sum of $4,000 out of the proceeds of said wheat and agreed with Klous that it would pay appellant's note out of said $4,000; that said bank authorized Klous to use a large portion of the proceeds of said wheat in defraying the expenses of harvesting and paying other obligations which inured to the benefit of the bank.

The bank answered, alleging specially that by the mortgage set up in plaintiff's petition Klous was given permission to sell not to exceed 25 per cent. of his wheat crop for the purpose of paying the note sued upon and harvesting expenses, thereby waiving the appellant's lien upon the wheat and making Klous its agent and representative to dispose of the crop, that Klous did sell about 14,000 bushel of wheat and received therefor the sum of $10,786.40, and that the amount received for 25 per cent. of said wheat was sufficient to pay the note sued on with the harvesting expenses.

The bank further alleged that the appellant's mortgage was void for want of description of the property mortgaged and was insufficient to identify the land upon which the wheat was growing. It further alleged that the bank's mortgage covered other and different wheat growing upon land not described in appellant's mortgage.

The case was tried to a jury, but the court directed a verdict in favor of appellant against Klous for the sum of the note, interest, and attorney's fees, less the credits, and further decreed that plaintiff and Klous take nothing against the bank.

It is unnecessary to discuss the several assignments in the order presented in the brief.

■ Klous testified that, when Underwood. the vice president of the original bank, found that there was no hail insurance upon the wheat upon which the bank had mortgages (which included other property) to cover Klous' indebtedness, aggregating about $19,-000, he approved Klous' action in having the wheat insured. The effect of the waiver signed by Underwood is to postpone the bank's debt and mortgages to the note and mortgage sued on. It is supported by a valuable consideration, is a complete estoppel on the part of the bank to thereafter insist upon priority in the payment of its debt, and fixes ·the rights of the parties as between the bank and the appellant. The record fails to show that the rights so fixed have been in any way modified by any subsequent. agreement or acts of the parties.

■ The contention of the bank throughout· its brief is that the waiver clause in the mortgage note sued upon constituted a waiver of the appellant's mortgage lien upon the crop because it authorized Klous, the mortgagor, to sell 25 per cent. of the wheat raised on the mortgaged lands. We cannot assent to this proposition. The consent on the part of the mortgagee for the mortgagor to sell 25 per cent. of the crop is upon the express condition that it was for the purposes of

paying the note sued on and the expenses of harvesting the crop. The rule is established that, "when a mortgagee's consent to the sale by the mortgagor is given on condition, the condition must be performed in order to render the consent a waiver of the mortgage lien as between the parties or as against a purchaser who was a party to the condition or had knowledge thereof, as where consent is given on condition that the proceeds of the sale be applied on the mortgage debt or that the mortgage debt should first be paid." 11 C. J. 625.

As said in 9 Tex. Jur. 185: "A waiver in law is the intentional relinquishment of a right. A mortgagor has the right to sell the mortgaged property subject to the encumbrance and the mortgagee has the right to assume that a buyer will not dispute his lien, where proper notice exists. Accordingly mere knowledge on the part of the mortgagee that the mortgagor would sell the mortgaged property to discharge his debt does not necessarily show a waiver of his lien and one who consents to a proposed sale of the property but refuses to release his lien thereby, negatives the intention of waiver."

Since the mortgage note was executed at the instance of the bank's vice president to protect the wheat upon which it held a mortgage, and in the face of the express agreement that the bank's debt and lien should be postponed to the mortgage note, it does not lie in the mouth of the bank to insist that the appellant has waived its lien in any sense in so far as the bank is concerned. The presumption obtains that the agreement of the insurance company that Klous might sell 25 per cent. of the crop to pay the note and harvesting expenses was made with reference to the bank's agreement that the appellant's lien should still be prior to the latter's mortgages. Weeks v. First State Bank (Tex. Civ. App.) 207 S. W. 973; Trabue v. Wade & Miller (Tex. Civ. App.) 95 S. W. 616; First National Bank of Tulsa v. Hoover et al. (Tex. Civ. App.) 244 S. W. 1044; First National Bank of Greenville v. First State Bank of Campbell (Tex. Civ. App.) 252 S. W. 1089; Crow, Hargadine & Co. v. Red River County Bank, 52 Tex. 362.

The appellee bank further contends that the court was justified in directing a verdict because the evidence did not show that any of the $4,000 had been received as proceeds of the sale of the wheat covered by the appellant's mortgage, and for this reason there was a failure of proof.

Klous testified that he raised wheat in Swisher county on approximately 2,000 acres of land during the year 1930; that before he made application for hail insurance he talked to Underwood, the vice president of the bank, and that the latter told him to be sure and have the wheat insured against hail; that the land described in the mortgage note is practically a correct description of the land on which he had wheat planted during that year; that he harvested all the wheat he raised during 1930 and sold it and paid $4,000 of the money to the First National Bank of Plainview. This question was asked him: "I will ask you whether or not that $4,000.00 came from the wheat you had raised on this land described in this insurance policy?" He answered: "Yes sir, it was." He further testified that, at the time he paid the $4,000 to Guy Jacobs, the vice president of the defendant bank, he told Jacobs that the insurance mortgage would have to be paid, and Jacobs said he would pay it if he had to. Klous admitted that he had received about $13,000 for all the wheat which he had raised and sold during 1930. He was then examined with reference to the disposition made of the remaining $9,000 after having paid the bank $4,000. He said that Underwood told him to sell the wheat and pay the expenses of harvesting; to harvest it as quick as he could and deliver it to the elevator, and, after paying the expenses, to send some money down to the bank; that he told Jacobs that the $4,000 was a part of the proceeds of the wheat raised upon the mortgaged premises and that the insurance note must be paid out of the $4,000, but they would not let him do so; that Jacobs took the $4,000 and released the mortgages which the bank held against Klous. He further testified that he bought four or five trucks, for which he paid $1,000 to $1,500 out of the proceeds of the wheat; that he could not hire all the wheat hauled, and called Underwood's attention to that condition, and Underwood said to buy some trucks. He then gave an itemized statement of where the remainder of the money was spent, in sums from $570 and less. We think this testimony was all immaterial.

The waiver signed by the bank in order to get the hail insurance unquestionably gave the appellant insurance company priority. The record fails to show that anything happened thereafter to change the relative position or rights of the respective parties. It is clear from Klous' testimony, from which we have quoted in part, that the $4,000 paid by him to the bank constituted a part of the proceeds of the wheat covered by appellant's mortgage. Appellant's mortgage does not specify that the $1,929.90 due it shall be the first money realized from the sale of the wheat, and, in view of the waiver and the agreement of the bank incorporated therein that, in the event the bank should take the property or proceeds thereof to satisfy its claim, it would protect the appellant, prevents the bank from insisting that appellant should not be paid out of the proceeds. No duty rested upon the insurance company to look to the application by Klous

of the money received for the wheat which he sold. As stated, its mortgage covered no particular part of the entire crop, and, when the bank received any part of the proceeds, it became the trustee of the amount received for the benefit of and to the extent of appellant's debt.

In view of another trial, we suggest that the court has improperly excluded the testimony of several witnesses as to conversations between Klous and Peters in the absence of the bank, and Klous and the officers of the bank in the absence of the insurance company, most of which we think was admissible as to all parties under the res gestæ rule.

We think the testimony of Klous unquestionably required the court to submit the issues to the jury, and, because of the error committed in failing to do so, the judgment is reversed and the cause is remanded.

MARTIN, J., disqualified and not sitting.