## SWIFT GIN CO. v. ROBINSON et al.
### No. 4302.

Court of Civil Appeals of Texas. Amarillo.

Nov. 19, 1934.

Rehearing Denied Dec. 10, 1934.

E. V. Hardwick, of Stamford, for appellant.

T. E. Knight, of Aspermont, for appellees.

HALL, Chief Justice.

The appellees J. E. and Charles Robinson, a firm doing business as Robinson Brothers, sued L. J. McGee and the Swift Gin Company, a private corporation, to recover upon a promissory note in the principal sum of $278.44, executed by McGee in favor of the plaintiffs. They also sought to foreclose a chattel mortgage given by McGee to secure said note covering cotton grown by McGee during the year 1933 on the farm of Mrs. Grice. The mortgage also included other personal property, which is not involved in this suit.

The Swift Gin Company was made defendant, and as against it plaintiffs alleged that it had purchased from McGee twelve bales of cotton which were covered by the mortgage. The value of the twelve bales alleged to have been converted by the Gin Company was fixed at $657.

McGee defaulted. The Gin Company answered by general demurrer, special exceptions, general denial, and specially alleged that the plaintiffs had waived the mortgage lien by consenting to the sale and were estopped because the proceeds of the cotton had been delivered to McGee, and with the knowledge of the fact that the checks given for the purchase price represented the cotton, plaintiffs had accepted the checks and, instead of crediting the several amounts thereof upon their debt, had sold McGee other merchandise.

The case was tried to the court without a jury and resulted in a judgment in favor of plaintiffs against McGee for the full amount

of the note and a foreclosure of the chattel mortgage lien. The court further decided that the appellant had unlawfully converted the cotton to its use to the value of $348.31 and judgment was rendered against it in favor of plaintiffs.

The testimony showed that McGee had executed a preference mortgage to the federal government securing a loan which the government had made him, and that there was still due a small amount, approximately $20, upon that indebtedness.

Appellant's first proposition is that because the plaintiffs had agreed with the government that its lien should have precedence over the plaintiffs' lien, the latter were estopped to file suit until the government's loan had been fully paid and that such agreement estopped plaintiffs from suing the Gin Company for conversion by reason of having purchased the cotton from McGee. This contention is without merit. The plaintiffs had the right to agree with the government and McGee that their prior lien would be postponed to the lien taken subsequently by the government. The government was not a party to the suit; its right is in no wise affected by the foreclosure against McGee.

The second proposition is that because the plaintiffs had given McGee their consent to sell the cotton, they were estopped to object to the sale and were not entitled to maintain this action against appellant for conversion.

Plaintiff Chas. Robinson testified he told the bookkeeper for the Gin Company that if he intended to buy the cotton from McGee he would buy it at his risk. This was denied by the bookkeeper. The court accepted Robinson's statement as true. This was not a waiver of the lien. Home Ins. Co. v. Klous (Tex. Civ. App.) 58 S.W.(2d) 176.

By the third proposition it is contended that plaintiffs being notified by appellant that McGee was selling the cotton to it, and plaintiffs having cashed numerous checks given by defendant to McGee in payment for said cotton and having sold him merchandise instead of applying the proceeds on the mortgage, and having adopted a course of conduct which showed that they did not object to defendant buying the cotton, but on the contrary agreed that McGee might sell it to appellant, they were estopped by such conduct, after all such cotton had been bought and paid for, to maintain this action for conversion.

Upon this issue the testimony is conflicting. It is not denied that the seven checks which Robinson's firm cashed for McGee amounted to $289, and it is conceded that McGee owed the government $225 which was a preference lien superior to the Robinson chattel mortgage. Chas. Robinson testified that out of the checks which McGee delivered to him, he paid $189.28 upon the government claim and McGee had paid $30 since then, which would be $219.28. He testified that when McGee brought in a check from the appellant Gin Company, he would deduct one-fourth of the amount of the check and deliver that to McGee with which to pay his rent. McGee testified that his rent was paid by delivering to Mrs. Grice, his landlady, every fourth bale of cotton. It is admitted that there is unpaid on the government note about $19 or $20. The record is not very clear with reference to who paid the expenses incident to gathering the cotton, hauling it to the gin, and the cost of ginning, bagging, and ties. The value of all the cotton which McGee sold to appellant is conceded to be $657.31. Chas. Robinson testified that he did not think he cashed any checks for McGee (or sold him any dry goods or groceries) except possibly one or two rent checks. Robinson further testified that he did not credit any of the checks received from McGee on the note sued on, but after deducting one-fourth as rent, the remainder was paid upon the government loan. Ernest testified that the cost of ginning the bales would be about $4.80 each, or $57.60 for the twelve bales, plus 90 cents per bale for bagging and ties, but that the cotton seed was about sufficient to pay those expenses.

According to Robinson's testimony he deducted one-fourth of the $289 received by him in checks from McGee, or $72.50, and returned that amount to McGee with which to pay rent. The remainder, or $216.50, he paid on the government loan. The court filed no findings of fact, but from the recitals in the judgment it is clear that he accepted Robinson's testimony as true. It follows that the plaintiffs did not realize upon the seven checks cashed by them more than enough to satisfy the claims of the government and the rent, which were both superior claims and had to be paid first. The record discloses that in paying for the cotton the appellant Gin Company gave McGee ten other checks which were cashed at other stores in Jayton and never came into the hands of the plaintiff. As stated, the lien was not released except as to enough cotton to pay the prior claims and the plaintiffs are not estopped from claiming their lien upon the cotton which was sold and the purchase price of which was rep-

resented by the ten additional checks. Since the court found that plaintiffs had not released their lien, as claimed by the defendants, plaintiffs were entitled to recover against the Gin Company in an amount over and above a sufficient sum to satisfy the rent and the government claim. The testimony as to this amount is to some extent confusing, but we must indulge every reasonable presumption in favor of the sufficiency of the testimony to support the judgment.

By the fourth proposition it is contended that because plaintiffs, as mortgagees, for a period of years had given their mortgagor, McGee, authority to sell the mortgaged cotton, a custom had been established and McGee had implied authority from plaintiffs to sell the cotton, and evidence of such custom was admissible and the court erred in excluding the proffered testimony upon that issue.

These facts were not pleaded by way of waiver or estoppel. The proffered testimony does not show that McGee had previously sold the appellants any cotton during former years, and there is neither pleading nor evidence which would work an estoppel against plaintiffs. Even though it be admitted that plaintiffs had allowed McGee to sell cotton during former years, this was evidence which under the rule of res inter alios acta was not admissible against the plaintiffs.

What has been said disposes of the fifth and sixth propositions.

We find no reversible error in the record, and the judgment is affirmed.