## GLOBE LAUNDRY v. McLEAN.   (No. 1849.)

Court of Civil Appeals of Texas. Beaumont.
June 6, 1929.

Crook, Lefler, Cunningham & Murphy, of Beaumont, for appellant.

W. D. Gordon, of Beaumont, for appellee.

O'QUINN, J.   On the 9th day of January, 1925, while crossing Magnolia avenue at the intersection of Calder avenue, in the city of Beaumont, appellee was struck and seriously injured by a Ford truck.   This suit was brought by her against appellant for the resultant damages.   She alleged that the truck was owned by appellant; that it was being operated by one of its servants in the due discharge of his duties to appellant; that the servant was negligent in operating the truck; and that such negligence was the proximate cause of her damages.   She specially pleaded her grounds of negligence as follows: "The defendant, operating a truck in charge of its employee and servant one M. F. Scott, was driving said truck in a southerly direction on said Magnolia Avenue at a great rate of speed, to wit; in excess of approximately thirty (30) miles an hour; and in the operation of said truck, which was propelled by gasoline motor power, the defendant, through its servant aforesaid, was wholly reckless of the rights of the plaintiff and of all other pedestrians similarly situated with plaintiff."

It is necessary to mention only appellant's general denial.   The trial was to the court without a jury and resulted in a judgment in appellee's favor for $1,400.   Appellant seeks for reversal of the case on the following grounds:

(a) There was no evidence that it owned the truck in question.

(b) There was no evidence that the driver of the truck was its servant or in discharge of any duty of his employment at the time of the accident.

These points will be considered together. The following was all the evidence on this issue: "That was a Ford truck.   It was a truck, enclosed truck, with the Globe Laundry insignia on it.   I didn't know the name of the man driving that truck.   I might—I couldn't say that I knew the man's name; I knew his

face, but I don't—I don't know if I would recognize him here in the court room or not. I see so many folks driving trucks that I couldn't say. I know it was a Globe Laundry truck."

Appellant says the statement, "I know it was a Globe Laundry truck," was a mere conclusion of the witness drawn from the fact that "the Globe Laundry insignia" was painted on the truck. We agree with this construction of this phase of the testimony. The witness was not testifying to the ownership of the truck from his independent knowledge, but only from the fact that appellant's name was printed on the truck. That was all the evidence before the witness. But the testimony quoted, uncontradicted and unexplained by appellant—and appellant offered no testimony —was sufficient to raise the inference that appellant owned the truck and that it was being operated by one of its servants in the ordinary discharge of the duties of his employment. Howell v. Mandelbaum, 160 Iowa, 119, 140 N. W. 397, Ann. Cas. 1915D, 349, and Edgeworth v. Wood, 58 N. J. Law, 463, 33 A. 940, are directly in point. In the first case it was said: "If, however, the name of the defendant was painted on the wagon, as testified by the witness on cross-examination, it was to be inferred that the wagon belonged to defendant and the driver was handling the rig on its account. From identity of names identity of persons or corporations is to be inferred, and the wagon was such a one as retail merchants make use of in the transaction of their business. It is improbable that other than the owner would inscribe his name on a delivery wagon, and, as the wagon was one appropriate to defendant's business, a prima facie case was made out by this proof. The name on tools or vehicles and articles generally is commonly accepted as indicating ownership, and, though not of much probative weight, it is enough, in the absence to the contrary, to carry the issue to the jury. This rule is not unreasonable, for, if the inference is not correct, no one ordinarily is in a better situation to establish the fact than the party so named."

In Edgeworth v. Wood, it was said: "All the witnesses who saw the accident and noticed the wagon which ran over plaintiff unite in declaring that it was painted as were the wagons of the company, and that it was marked with the company's name and device. Considering the great improbability that any other owner of a wagon would thus paint and mark it, a plain inference could be drawn from the evidence that the wagon in question was in the ownership of the company. If that inference be drawn, it is sufficient to establish prima facie that the wagon, being owned by the company, was in its possession, and that whoever was driving it was doing so for the company."

(c) Appellant says there was no evidence that the speed at which the truck was being operated was negligence, in that it was the proximate cause of the accident.

Appellee pleaded only one ground of negligence, to wit, "a great rate of speed," which was "wholly reckless of the rights of the plaintiff and all other pedestrians similarly situated with plaintiff." All the evidence on this issue was circumstantial. No one saw the truck before it struck appellee. The street at this crossing was not being used by any other persons at the time of the accident. The accident occurred about 6 p. m. The street was well lighted by electric lights hanging in the street and also by lights from a drug store at the northwest corner of this crossing. It was misting rain. The street car company maintained a traffic director at this point. Ordinarily this crossing was a busy corner, one of the busiest in that section of town. A street car track was in the center of Magnolia avenue, and another track was in the center of Calder avenue, crossing each other at right angles. In crossing Magnolia avenue, appellee was on the south side of Calder, walking west, and was struck when she was about two-thirds or three-fourths of the way across Magnolia avenue. The truck was going south on the west side of Magnolia avenue. After striking appellee the truck dragged her body about 20 or 25 feet, and, when it was stopped, appellee's body, except her head and shoulders, was under the truck between the front wheels, her head and shoulders protruding beyond the front end of the car. She was rendered unconscious by the collision, her body was badly bruised, and her clothes destroyed. The servant of the street car company above referred to, whose duty it was to supervise the movement of the street cars, and who witnessed the accident just as the truck came to a stop, and who was the first person to reach the truck, testified as follows: "As to whether I heard the driver of the truck say anything at the time, the driver of the truck said something; I am not positive of the exact words that he said, but I think that he said he couldn't see on account of the weather, the water being on the windshield. I wouldn't be positive, but he said something about not being able to see very well."

Appellee is entitled to every inference of negligence deducible from the facts in evidence. However, this rule requires that facts and circumstances must be in evidence from which negligence can be deduced. Where the accident does not ordinarily occur when proper care is used, and results from events or circumstances under the control of the defendant, and defendant offers no evidence explaining the accident, the mere fact that it happened may afford a basis for deducing negligence. Texas & Pacific Coal Co. v. Kowsikowski, 103 Tex. 173, 125 S. W. 3. But that is not appellee's case. She did not plead the

facts of the accident, leaving the issue of negligence as one flowing from the facts and to be found by a jury, but she specially pleaded that the accident was proximately caused by the dangerous rate of speed at which the car was being operated and that such speed was negligence. Having predicated her cause of action upon this specific act of negligence, she was under the burden of offering facts upon which this specific act could be inferred. Because the accident happened, we cannot infer that it was proximately caused by the speed of the car. That issue must be deduced from the testimony. In deducing that issue we recognize that the rate of speed must not be so great as to prevent the operator from maintaining control of the machine and must be within such bounds as will not endanger others, considering the place where the accident occurred and the circumstances attending it. 28 Cyc. 29. Is there a circumstance in this case suggesting that appellant, in the speed at which the car was being operated, violated any duty imposed by this rule? Appellee herself did not see the car. She so testified. The servant of the street car company, standing at the northwest corner of the crossing, was not attracted to the truck as it passed him. Though the truck struck appellee and dragged her body 20 or 25 feet, no bones were broken and the bruises and lacerations on her body healed within a reasonable time. From these facts and circumstances the inference does not arise that the truck was being operated at an excessive rate of speed, for in that event the accident would most probably have resulted in appellee's death or in seriously crippling or maiming her body. The inference naturally flowing from these facts would be that the truck was being operated only at a moderate rate of speed. That this was a busy corner, that the street car company had a director of traffic at this corner, and that the corner was well lighted, were circumstances properly in evidence. Denison & S. R. Co. v. Powell, 35 Tex. Civ. App. 454, 80 S. W. 1054. But what weight do they have in giving rise to the inference of negligence in relation to the speed of the truck? No other traffic was on this street at this point when the accident happened. There is no suggestion that appellee saw the truck and was not able to avoid it because of its excessive speed. There is no suggestion that the driver saw appellee, prior to striking her, and was not able to avoid the accident because of the speed of his car. There is no suggestion that he lost control of the car. The evidence excludes every inference that he should have regulated his speed to meet duties arising from a crowded traffic, for there was no crowded traffic. There is no suggestion that the striking of appellee caused the car to skid or to deviate from its course down Calder avenue. Giving due weight to every circumstance in the record, we are unable to draw any inference suggesting any specific speed at which the car was being driven or that the speed of the car, whatever it might be, was a contributing cause to appellee's injuries.

In support of our construction of the circumstances enumerated, we think the res gestæ statement of the truck driver fully explains the cause of the accident as being the failure on his part to keep a proper lookout, excluding any inference that the speed of the car was a contributing cause. "He said he couldn't see on account of the weather, the water being on the windshield." This evidence affords a satisfactory explanation of the accident. The truck was being driven under conditions that prevented the driver from seeing appellee, in view of the care he was exercising at that time. Based on this statement, aided by the other circumstances in the record, negligence in operating the car without keeping a proper lookout was deducible. But this was not appellee's case. She did not plead this ground of negligence, and, therefore, the fact that the evidence raised it in her favor cannot support her judgment.

It follows that the judgment of the trial court must be reversed, and the cause remanded for a new trial.