## YOUNGER BROS., Inc., v. POWER.

### No. 2918.

Court of Civil Appeals of Texas. Beaumont.

April 3, 1936.

Rehearing Denied April 8, 1936.

John T. Vance, of Edna, and Fulbright, Crooker & Freeman, of Houston, for appellant.

Sewall Myer and Lewis Fisher, both of Houston, for appellee.

WALKER, Chief Justice.

This appeal was filed in the Galveston Court of Civil Appeals and transferred to this court by orders of the Supreme Court.

Appellee, Frank Power, Jr., filed this suit in district court of Jackson county against appellant, Younger Brothers, Inc., a corporation, to recover damages in the sum of $26,000 for personal injuries received by him on the 11th day of August, 1934, in a collision between an automobile in which he was riding and a truck which he alleged was owned and operated by the appellant at the time of the collision. Appellant was duly served with citation, and on the 2d day of March, 1935, two days before it was required to answer, filed its plea of privilege to be served in Gregg county. Appellee did not file his controverting affidavit within the five days provided by article 2007, Rev.Civ.St.; on the 11th day of March, the next day after the expiration of the five-day period, appellant

1148

appeared in court with the request that the court enter an order of transfer, as prayed for in the plea of privilege, and tendered to the court formal orders of transfer, which had been prepared by appellant's counsel. The court refused to make the order of transfer, but, on that date, permitted appellee to file his controverting affidavit by which he claimed venue under the ninth exception to article 1995, on the ground that his suit was based upon a trespass committed in Jackson county, and also under the twenty-third exception on the ground that his cause of action arose in Jackson county. The hearing on the plea of privilege was set for the following 23d day of March. On that day the cause came on to be heard, and, after overruling appellant's motion to strike the controverting affidavit, the plea of privilege was overruled. The appeal is from that order.

 Appellee showed "good cause" for not filing his controverting affidavit within the five days allowed by article 2007. Construing the five-day clause of that article, the Texas Commission of Appeals in Texas-Louisiana Power Co. v. Wells, 121 Tex. 397, 48 S.W.(2d) 978, 981, said: "We do not think that such provision was intended to affect the power of the court to authorize such plea to be filed after the expiration of the prescribed period, when good cause is shown."

The following testimony raised the issue of good cause. Appellant filed its plea of privilege on the 2d day of the month, but had no notation of the filing made on any docket in court, and did not advise appellee's counsel that the plea had been filed nor did it call the plea to the attention of the court until the next day after expiration of the five-day period. Within the five-day period counsel for appellant talked with counsel for appellee and the court about the trial of the case on the merits, but made no reference to its plea of privilege; within the five-day period counsel for appellee inquired of the clerk whether or not a plea of privilege had been filed, and was advised by the clerk that no such plea had been filed; counsel for appellee testified that within the five-day period he took to his office the file, or jacket, that contained all the papers in this case and carefully examined them, and that the plea of privilege was not among the papers. On authority of the case cited, this statement of the testimony supports the conclusion of good cause. See, also, Page v. Schlortt (Tex. Civ.App.) 71 S.W.(2d) 886; Pelton v. Allen Inv. Co. (Tex.Civ.App.) 78 S.W.(2d) 272.

Appellant contends that the court found affirmatively against the issue of good cause and based its order entirely and exclusively on the following statement made on the 11th day of March, permitting appellee to file his controverting affidavit: "The court having heard and duly considered all of said evidence and the aforesaid written motion of plaintiff (motion to file controverting affidavit) is of the opinion and finds that the time within which plaintiff is entitled by law herein to file his controverting affidavit to the plea of privilege of defendant on file herein has not expired." This conclusion was made by the court in its order permitting plaintiff to file his controverting affidavit. Subsequently, on the 23d day of March, the court heard appellant's motion to strike the controverting affidavit, and by formal order overruled that motion, and in connection therewith made the following statement discussing the issue of "good cause," as developed by the testimony on the 11th of March on appellee's motion to file controverting affidavit:

"The evidence is very explicit as to what Judge Sample said with reference to trying to locate those pleas of privilege. That was all the Court was concerned about, following what I conceived to be the law at that time. As you will recall, I ruled that the controverting affidavits should be filed and I permitted them to be filed on March 11, and set this hearing down on the controverting plea today as I was not familiar with the holding of the Supreme Court on the proposition. My attention was not called to it by either side, but I just thought that this appealed to this Court and if the Supreme Court had not passed on it, it was a good time for it to do so and we would make some new law on the matter, because we had it squarely before the Court. I was advised later, subsequent thereto, that the Supreme Court had ruled upon a case directly in point with this. I do not care for any other testimony, gentlemen, unless you want to complete your record. If your record is incomplete, this Court has always tried to let a lawyer have his record complete so that the higher court may pass on the question properly."

It is clear from this statement by the court that he sustained appellee's motion to file the controverting affidavit and overruled appellant's motion to strike on the conclusion that appellee had shown good cause, as defined by the Commission of

Appeals in Texas-Louisiana Power Company v. Wells, supra, the case to which the court referred in his statement copied above.

 Appellant also assigns error against the conclusions of the trial court overruling the plea of privilege on the hearing on its merits; the contention is made that the evidence was insufficient to raise the issue that appellant (a) owned the truck (b) or was operating the truck at the time of the collision. The following summary of the testimony refutes these contentions: It was shown that appellant was a corporation, and that the collision occurred in Jackson county. On the issue that appellant owned the truck, Miss Thelma Power testified that she went to the place of the accident soon after it happened and saw the automobile in which appellee was riding and the truck with which it collided, that both the truck and the automobile were at the place of collision, and that, printed on the side of the truck, she saw the monogram "R. Y. D.," with the number "31" printed under the monogram, and that this monogram was appellant's insignia. She testified further that a man was sitting on the side of the road near the truck, who told her that he was the driver of the truck; a few days afterwards she saw this same truck at a different place in charge of this same man. At the time of the collision the truck was loaded with freight; appellant, by its charter, was authorized "to engage in the teaming and trucking business." Appellant offered no testimony whatever. The fact that the truck bore appellant's insignia, unexplained, was sufficient to raise the inference that it owned the truck and was operating it at the time of the collision. Globe Laundry v. McLean (Tex.Civ.App.) 19 S.W.(2d) 94. The quoted testimony—pretermitting a discussion of res gestæ—strengthens the inference that appellant owned the truck.

In Highway Motor Freight Lines v. Slaughter (Tex.Civ.App.) 84 S.W.(2d) 533, 536, construing the testimony on a similar situation, the court said: "Defendants' failure to combat this evidence is considered significant."

In Reilly v. Buster (Tex.Civ.App.) 52 S.W.(2d) 521, 525, the court said: "Usually the force of evidence, though slight, is greatly increased by the failure of the opposite party to rebut it, where it is obvious that the means are readily accessible to him. * * * The testimony * * * is certainly sufficient to have required the appellant,

Reilly, to produce Carlton [the driver] as a witness or to bring evidence from his office showing" movement of the truck, etc. "A fundamental rule of evidence is that a jury may presume the existence of certain facts from proof of others."

In Green v. Scales (Tex.Civ.App.) 219 S.W. 274, 276, it was said: "The failure to produce evidence within a party's control raises the presumption that if produced it would operate against him, and every intendment will be in favor of the opposite party."

On the authorities cited the court was justified in finding that appellant owned and was operating the truck at the time of the collision.

The following summary of the evidence, taken from the brief of the appellee, sustains the conclusion that appellant was guilty of negligence proximately causing appellee's injuries:

"The witness Frank Power, Jr., testified that on August 11, 1934, at about 10 o'clock P. M., on State Highway No. 12, on his way to Edna, Texas, and when about three or four miles from Edna, he saw the lights of two cars approaching. He was driving west towards Edna and the two cars, whose lights he saw, were approaching him from Edna. Plaintiffs, Hugh Avant, Carolyn Ridley and Florence Johnston, were in the automobile with the witness. He and his party of friends were going to Edna to visit the witness's parents in their home in Edna. His car was traveling on the right-hand side of the road going towards Edna, Texas. He saw the lights of the two automobiles approaching. He immediately lined his car with the black line down the center of the highway and about eighteen inches to two feet on the right of the black line, and his car was on the right-hand side of the road headed toward Edna. He retained this position on the right side of the road until the collision. The car approaching him was going at a rapid rate of speed. The car approaching was on the opposite side of the road going at a rapid rate of speed in an easterly direction, which was the opposite direction from which witness was traveling. Witness's car successfully passed the front part of the approaching car and then the crash occurred.

"There were no guide lights on the approaching vehicle. After the impact he remembers nothing until he came to in the doctor's office. After witness's car passed the front end of the approaching vehicle

there was an impact that turned over witness's car and knocked witness out.

"The witness was driving his own automobile. It was a coupé with rumble seat. He and Miss Ridley were in the front seat. Miss Johnston and Mr. Avant were in the rear seat. Witness testified that neither he nor the other parties had been drinking, and testified there was no liquor in his automobile.

"Witness drove the car from Houston to scene of collision.

"There wasn't any fog. It was a clear night and he had good lights on his car. The road is perfectly straight for a mile or so in each direction from place of collision.

"The vehicle, the truck, was moving at the time of the collision, in the opposite direction from which witness was traveling.

"The vehicle which collided with witness's car passed another car traveling on the highway going in the same direction in which the vehicle which collided with witness's car was traveling. This passing of the two approaching vehicles occurred several hundred yards down the highway towards Edna, Texas, from where witness's car was traveling along the highway. When the approaching truck passed the other car, the car so passed went out of vision. The truck did not stop after it passed the other car. He saw the truck come around the other car going in the same direction as the truck was going. The truck came from behind the other car going in the same direction as the truck was going. The truck passed such other car and after passing such other car the truck began to pull over towards the truck's right side of the highway. The truck, when several hundred yards down the highway from where witness's car was traveling, pulled out and passed around the automobile going in the same direction the truck was going.

"The witness George Fuller testified after identifying the time and place of the collision. Just prior to wreck the truck approached Fuller's car from the rear and in passing Fuller's car the truck was on the left-hand side of the road going east. After the truck and its trailer passed Fuller's car it began to pull back to the right-hand side of the road going east. At the time of the wreck the trailer body was sticking across the black line in the center of the road. A part of the trailer body was on the left-hand side of the center line going east

about three to five feet. The Power car was coming in the opposite direction going west and well on its side of the road at the time the truck's trailer ran into and side-swiped Power's automobile and turned Power's car over several times and badly wrecked it. The truck stopped 25 or 30 feet east of where the collision occurred. The left front wheel was off the pavement on the left-hand side of the road going east, when the truck stopped.

"Miss Velma Power testified that she promptly drove to the scene of the wreck, which was in Jackson County on Highway No. 12, about three miles east of Edna, Texas. She saw her brother's car, demolished, off the pavement and on the right-hand side of the concrete part of the road coming from Houston and towards Edna. The truck was on the same side of the road as her brother's car. The truck was headed towards Houston and on the left-hand side of the road going in the direction of Houston. The truck was nearer to Houston than was her brother's car. The truck was on the shoulder of the road and on the left-hand side of the road headed towards Houston. The rear left wheel of the truck was broken and the axle was down on the shoulder of the road. The axle had made a furrow in the shoulder of the road on the left-hand side of the road going towards Houston, possibly twelve inches deep and several feet long. No other part of the truck except the rear left wheel was broken. The truck and trailer had no guide lights."

Adkins v. Essler (Tex.Civ.App.) 38 S.W. (2d) 411, is directly in point in support of the conclusion of negligence. See, also, Scott v. Carlos (Tex.Civ.App.) 13 S.W. (2d) 957; DeMars v. Montez (Tex.Civ. App.) 277 S.W. 402.

As appellant was actively operating its truck at the time of the collision, the act of negligence constituted a trespass, McDaniel v. Woodward (Tex.Civ.App.) 70 S.W.(2d) 765; Schuller v. Fears (Tex.Civ.App.) 67 S.W.(2d) 343; Adkins v. Essler, supra; Vaught v. Jones (Tex.Com.App.) 17 S.W. (2d) 779; Herrin v. Lowe (Tex.Civ.App.) 60 S.W.(2d) 1071, conferring venue under exception 9 of article 1995; and, as appellee's cause of action arose in Jackson county, he also sustained his venue under exception 23.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.