## SOUTHERN UNDERWRITERS v. GIRARD.

### No. 5135.

Court of Civil Appeals of Texas. Texarkana.

May 27, 1937.

Battaile & Burr, of Houston, for plaintiff in error.

Houston & Johnson and W. L. Oliphant, all of Dallas, for defendant in error.

WILLIAMS, Justice.

This suit involves the right of Floyd Girard, defendant in error, to recover compensation under the Workmen's Compensation Act of Texas (Vernon's Ann.Civ.St. arts. 8306–8309) for accidental injuries received in the course of an alleged employment by the Adams Oil Company, a subscriber, insured by the Southern Underwriters, plaintiff in error. The parties will herein be referred to as claimant, insurer, and employer. Claimant appealed from the award made by the Industrial Accident Board. Upon trial to the jury, judgment was rendered for claimant. This appeal is predicated upon one assignment of error, namely, the court erred in refusing to instruct the jury to return a verdict for the insurer at the conclusion of the evidence. Insurer urges that in order for a claimant to recover for compensation benefits, he must establish by a preponderance of the evidence the fact as to who his employer is, and that his employer is a subscriber under the Workmen's Compensation Act. This is the only proposition urged in this appeal.

It is uncontroverted in this evidence that the Adams Oil Company was a subscriber under the Workmen's Compensation Act, and was insured by the Southern Underwriters, Houston, Tex. Adams Oil Company had theretofore filed with the Industrial Accident Board notice that it had become a subscriber under the compensation law with Southern Underwriters of 1408–10 Sterling building, Houston, Tex., as insurer. In this notice so filed with the board, are the recitations: "Occupation: Oil refining; estimated annual payroll: $13,800; Policy No. W. C.–575" and was signed "Adams Oil Company by W. E. Miller." Claimant testified that he knew a Mr. Miller who was connected with the refinery where he worked; that he had seen this Mr. Miller in and about the plant but did not know his initials.

It was undisputed that claimant was hired by a Mr. Utley and worked from along in May, 1934, until October 24th, at a refinery

located on Pistol Hill near Kilgore, and on this latter date while so employed at this refinery he received the injuries described in his petition.

The evidence is uncontradicted and unexplained that gauges and laboratory equipment tagged and addressed to "Adams Oil Company" were received and installed on the distills and boiler at the refinery where claimant worked. It is further undisputed in the evidence that there was in the office on the refinery location where claimant worked stationery with the heading "Adams Oil Company."

The only testimony offered by insurer bearing upon the question as to the identity of claimant's employer or this refinery where claimant was working is: A Mr. Rotrammel testified that a Mr. Utley engaged him to work in a refinery located on Piston Hill, near Kilgore, and that claimant worked with witness at the same refinery and they were working there when claimant received his alleged injuries, and that this was the Triangle Refining Company and owned by Rex Stegall. It introduced a statement made by claimant to a physician at the time of claimant's first medical examination that recited he was injured at the Triangle Refinery. Claimant testified that he knew the refinery as the Adams Oil Company and worked for the Adams Oil Company from in May to October 24, 1934, but knew it had been called the Triangle Refinery. The notice given by Adams Oil Company that it had become a subscriber under the Workmen's Compensation Act does not reveal the true identity of "Adams Oil Company," whether some individual or individuals operating under this trade-name, or whether a corporation. Plaintiff's allegations as to the identity of Adams Oil Company, the alleged employer, reads:

"* * * that plaintiff is not informed as to who or what composes Adams Oil Company, and, for want of more particular information, alleges that Adams Oil Company, is either a corporation duly incorporated under the laws of the State of Texas, or that Adams Oil Company is a trade name of an individual, or individuals, not known to plaintiff, or the firm name of a partnership composed of members not known to plaintiff; that whatever or whoever constitutes, or constitute, the said Adams Oil Company, it or they occupied the relation of employer to plaintiff in the business hereinabove described, in which it, or they, was, or were, a subscriber, or subscribers, as hereinabove alleged and that the defendant here named, the Southern Underwriters, was the insurer. * * *"

We are unable to state what the answer of insurer revealed as to the identity of Adams Oil Company, for the answer of insurer has not been incorporated in the transcript. Adams Oil Company may have been Rex Stegall using this as a trade-name, and operating this refinery under the trade-name of Triangle Refinery. But it is immaterial whether Adams Oil Company was an individual or a partnership using this as a trade-name, or that it was a corporation. It is an undisputed fact that Southern Underwriters, Houston, Tex., was the insurer for a concern named "Adams Oil Company" and that "Adams Oil Company" was in the oil refining business.

■■ The court defined "employee" and "in the course of employment." To question No. 2, reading: "Do you find from a preponderance of the evidence that such injury was sustained while in the course of employment as an employee of Adams Oil Company," the jury answered "Yes." This brings us to the universal rule, and applicable here, that jurors are the exclusive judges of the facts, the credibility of witnesses, and the weight to be given their testimony, and, in determining such a question; the evidence must be viewed in the light most favorable to the verdict. Federal Surety Co. v. Scott (Tex.Civ.App.) 22 S.W. (2d) 157; Swift Gin Co. v. Robinson (Tex. Civ.App.) 77 S.W.(2d) 333.

■ There were no signs up at the refinery to show either its name or who owned it. It had been under construction and was just about finished at the time of claimant's injury. Equipment and parts shipped and delivered and installed in the plant were addressed to "Adams Oil Company." Stationery in the office carried the heading "Adams Oil Company." No explanation being offered as to either of these items, the jury had the right to infer from these facts that the concern in charge of the refinery where claimant worked was "Adams Oil Company."

■ In the language of the court in Howell v. Mandelbaum & Sons, 160 Iowa, 119, 140 N.W. 397, 399, Ann.Cas.1915D, 349:

"The name on tools or vehicles and articles generally is commonly accepted as indicating ownership, and, though not of much probative weight, it is enough, in the ab-

sence to the contrary, to carry the issue to the jury. This rule is not unreasonable, for, if the inference is not correct, no one ordinarily is in a better situation to establish the fact than the party so named."

In Globe Laundry v. McLean (Tex.Civ. App.) 19 S.W.(2d) 94, 95, appellant's name was printed on the truck which figured in the accident. That was all the evidence before the witness. The court in discussing this bit of evidence, states:

"But the testimony quoted, uncontradicted and unexplained by appellant—and appellant offered no testimony—was sufficient to raise the inference that appellant owned the truck."

See, also, Roadway Express, Inc., v. Gaston (Tex.Civ.App.) 90 S.W.(2d) 874.

More than five months prior to this trial plaintiff filed his petition, wherein he alleged:

"That both the employer and the defendant herein had knowledge of plaintiff's injury immediately after the same was sustained and in addition thereto plaintiff gave notice of such injuries to defendant within thirty days after the infliction thereof; that within six months from the date of said injury plaintiff made claim for compensation, which claim defendant recognized by the payment of ten weekly installments of compensation at the inadequate rate of $13.85, but that since that time defendant has failed and refused to pay any additional compensation; that on the presentation of plaintiff's claim to the Industrial Accident Board, in conformity with the facts and circumstances hereinabove set out, the said claim was duly docketed before the Board as No. U-2794, Floyd Girard, Employee, v. Adams Oil Company, Employer, The Southern Underwriters, Insurer, and, the said claim coming on for hearing in due order, the Industrial Accident Board made its final ruling and decision thereon on the 11th day of March, 1935. * * *"

■■ In the trial claimant testified that he was paid 10 weeks' compensation; that the first check he received was for $27; then he received two other checks for $13.85 each; and the last check was for $55.40, which he received in February; that the name "Southern Underwriters" of Houston was signed to the check he so received, indorsed, and cashed. These payments were not disputed nor explained by the insurer. It is unreasonable to believe that the insurer would pay compensation for this length of time to one not an employee of a concern insured by it. These 10 weeks' compensation payments by insurer to claimant unexplained, if not an admission, is at least very persuasive evidence that claimant was an employee of "Adams Oil Company." The fact of these payments is not only competent but cogent evidence to show the relation of these parties as employer, employee, and insurer. This certainly would support the inference that these payments were made in conformity with facts bringing claimant within the terms of the contract of insurance, and as an employee of "Adams Oil Company" as found by the jury in response to question No. 2. Casualty Reciprocal Exchange v. Berry (Tex.Civ.App.) 90 S.W. (2d) 595, 597; Georgia Casualty Co. v. Ginn (Tex.Civ.App.) 272 S.W. 601, 602; Texas Employers' Ins. Ass'n v. Beckworth (Tex. Civ.App.) 42 S.W.(2d) 827; Bankers' Lloyds v. Seymour (Tex.Civ.App.) 49 S.W. (2d) 508; 17 Tex.Jur. pp. 306, 307.

In Georgia Casualty Co. v. Ginn, supra, the court says:

"Under the facts in this case, showing the conduct of appellant in making these partial payments and its acquiescence, it does not lie in the mouth of appellant to now deny the issuance of this policy. It was in possession of its own books and records relating thereto, and, if it had not issued such a policy, it was in a position to make the proof, and its silence or failure to produce the evidence will be construed most strongly against appellant."

In Casualty Reciprocal Exchange v. Berry, supra, Justice Hall of the Texarkana Court of Civil Appeals, in discussing payments by the insurer to claimant, uses this language: "We can conceive of no stronger admission of the fact that it had issued the policy to the employer" than the fact that insurer had made these compensation payments to claimant.

The question presented in both cases just quoted from was whether the insurance company insured the concern for whom the claimant was admittedly working. In the instant case, the question is whether the claimant was working for the employer admittedly insured by Southern Underwriters. There can be no distinction by reason of these facts in the inference to be drawn from the payment of this 10 weeks' compensation.

All the facts in evidence are of such weight as to support the verdict, and the judgment is therefore affirmed.