**PEVETO et al. v. SMITH.**

No. 3209.

Court of Civil Appeals of Texas. Beaumont.

Dec. 15, 1937.

Rehearing Denied Feb. 9, 1938.

W. C. Ross, Jr., and W. O. Bowers, Jr., both of Beaumont, for appellants.

Jack M. Moore and John H. Benckenstein, both of Beaumont, for appellee.

COMBS, Justice.

Mrs. Iva Smith, a widow sued appellants, Arlas Peveto and H. B. Jackson, as defendants for $30,578.35 actual damages and $10,000 exemplary damages, on account of the death of her son Charles Olen Smith, which occurred as the result of injuries sustained by him on April 22, 1936. The accident in which he was injured occurred on the viaduct or approach of the Neches River Bridge, near Beaumont in Jefferson county.

In their petition the plaintiff alleged: "That on or about April 22, 1936, at or about the hour of six thirty o'clock P. M., the said Charles Olen Smith, now deceased, left his work at Pennsylvania Shipyards, Inc. in Beaumont, Texas, and started to his home at Vidor in Orange County, Texas, and drove his car, a certain Dodge, 1927 Model Sedan, Texas License No. 647-369, on and over the United States Highway No. 90, which runs from Beaumont to Vidor, Texas, at or about said time was driving his car on and along said public highway and was driving same in a southeasterly direction over the viaduct and was approaching the bridge that crosses the Neches River, when suddenly and without previous notice his engine stopped running and he pulled over to the fartherest edge of said viaduct on his right hand side. At said time and place it was not yet dark but, nevertheless, he turned his lights on and the lights on his said car, both front and rear, were burning. The said Charles Olen Smith got out of his car, raised the hood on the left hand side and began to inquire into the trouble of his engine and was examining the vacuum tank on his said car when suddenly, without any notice or warning of any kind whatsoever, the defendant, Arlas Peveto, driving a new Ford V8 Pickup Truck, License No. 122-CM091, loaded with sacks of meal or some such commodity, drove said truck with great force and violence into the rear of said Dodge Sedan, and the said Charles Olen Smith was thrown against said Dodge Sedan and down on said highway and was brutally, severely and fatally injured, and suffered thereby the following injuries, which resulted in his death, to-wit: Fracture of upper jaw, loosening all the upper teeth, a wound on the roof of his mouth, punctured like, both eyes bruised and almost closed, a fracture of the lower jaw on the right side, which caused quite a deformity, injury to the right thigh near the right groin, and internal injuries of the abdomen, which likely ruptured some of the viscera, particularly the kidney and the intestines."

And further: "That by reason of such negligent, careless and incompetent and inexperienced management of said Ford V8 Truck by defendant, Arlas Peveto, and as a direct and proximate result therefrom, the said Ford V8 Truck struck, knocked, collided, ran into and against the rear of said Dodge Sedan with great violence, knocked, propelled, broke and damaged the same, and threw the said Charles Olen Smith on and about the engine, windshield, and fenders of said Sedan and down and upon said highway whereby he received the injuries hereinbefore mentioned, which caused his

death; and in this connection plaintiff further alleges that said collision, the injuries to the said Charles Olen Smith, which later caused his death, all herein fully alleged, each and all, were caused by the negligent acts on the part of defendant, Arlas Peveto, herein alleged."

The defendant Jackson was brought into the case on the theory of partnership by the following plea: "Upon information and belief, plaintiff charges the facts to be that prior to the accident herein mentioned, defendant, H. B. Jackson, and Arlas Peveto, defendant, entered into an agreement, either oral or written, as the proof will show, by the terms of which the said H. B. Jackson contributed money and credit and the said Arlas Peveto contributed his services and other considerations to operate several mercantile stores, which business was known as 'Peveto Mercantile Company'; that said parties were to receive a portion of the net profits, either from the beginning or at some subsequent time, as the proof will show; that by said agreement the said H. B. Jackson and the said Arlas Peveto became partners and became jointly and severally liable for the wrongs of each other incurred in the partnership business. That said Ford V8 truck which the said Arlas Peveto drove into the said Dodge Sedan and which inflicted the injuries and subsequent death of the said Charles Olen Smith, had painted on the sides thereof, 'Peveto Merc. Co.', and that said truck was being used at said time and place in the partnership business, and that said Arlas Peveto at said time and place was driving said truck with a load of merchandise to Mauriceville to be used and disposed of in the partnership business and was driving said truck at said time and place within the scope of his authority as a partner of H. B. Jackson."

The defendants answered by general demurrer, special exceptions, and general denial, and pleaded specially that the deceased, Charles Olen Smith, failed to exercise ordinary care under the circumstances, which failure on his part was proximate or contributing cause to his injury. There was no specific denial of the partnership, and no verified plea was filed as provided by statute.

The trial was to a jury, and since one of appellants' main contentions is that the evidence did not connect Peveto with the accident or raise any issue of negligence against him, as found by the jury, it is necessary to briefly summarize the evidence.

Charles Olen Smith lived with his widowed mother and younger brothers and sisters at Vidor. He worked at the Pennsylvania Shipyards, at Beaumont, and contributed about $60 per month to the support of his mother and the family, and was practically their sole support. He was sober and industrious.

On the day of his fatal injury, April 22, 1936, he did not work at the Shipyards, there being no work for him there that day. He brought his automobile, an old Dodge sedan, to the home of a married brother in Beaumont, where he and a cousin, Everett Smith, worked on it most of the day. Everett Smith, who lives in Louisiana, was not present at the trial, but it was stipulated that if present he would testify that at about 6:30 p. m. he and Olen Smith started to the latter's home in Vidor in the Dodge car, traveling eastward on the Old Spanish Trail highway; that when they were on the viaduct or approach of the Neches River Bridge, traveling eastward toward Vidor and Orange, the car ran out of gasoline. The vacuum tank was dry. They parked the car on the right-hand side of the viaduct and both walked back toward Beaumont to the Bridge Service Station, which was near the end of the viaduct. Everett Smith decided he would not go on to Vidor and returned to his boarding place in Beaumont, leaving Olen at the service station.

Ralph Wilson, a school teacher, testified that at about 6 o'clock that day he passed over the Neches River Bridge, on his way to the Boy Scout Camp, which is near Vidor; that he saw a car parked on the viaduct. From photographs in evidence he identified it as the Olen Smith car. It was facing toward Vidor and Orange and was on the right-hand side, and as near the railing or walkway as it could get. As he traveled along the viaduct approaching the car, he met two men between it and the Beaumont end of the viaduct walking back toward Beaumont. He did not know either party. He saw no one around the car. He passed by it without difficulty as he had plenty of room to pass.

J. W. Long, of Vidor, testified that he passed over the bridge, going toward Vidor, a little before dark; that the Smith car was parked on the right-hand side and facing toward Vidor. The tail-light was burning. He did not notice whether the

headlights were burning, as it was still light enough to see fairly well. There was a young man at the car, whom Miss Bell Johnson, who was riding with Long at the time, said was one of the Smith boys. He looked like he was having trouble with the vacuum tank. He had the hood up and was standing by the car with a can in his hand. The Smith car was in plain view and could be seen from the time he got on the viaduct. He passed around it without difficulty.

Martin Richardson, an automobile salesman of Beaumont, and who knew Olen Smith, testified to passing over the bridge to Vidor about dusk. He saw Olen Smith with the hood of the car up and spoke to him as he went by. The headlights on the Smith car were burning. He had no difficulty in passing around the car.

Ralph Wilson stayed over at the Boy Scout Camp a few minutes and came back to Beaumont. When he got on the viaduct of the bridge, the Smith car, still facing toward Orange, had crossed over to its left, or wrong side of the bridge. The headlights were burning. As Wilson drove around the car he saw a man (identified as Olen Smith) immediately back of it in a sitting or crouched position. He stopped his car and went to him and saw that he was severely injured. He was bleeding profusely. With the aid of bystanders who came up, Mr. Wilson put the injured man in his car and carried him to the Roberts Undertaking Company, from where he was transferred to Hotel Dieu Hospital, in the city of Beaumont.

As bearing upon Peveto's connection with the case, and his alleged negligence, the following facts were shown: By photographs of the Olen Smith automobile, and by testimony of police officers who went to the scene, it is shown that the rear of the Olen Smith car had been struck and considerably damaged. The defendant Arlas Peveto was in Beaumont from about 2 o'clock on the afternoon of the accident until about dusk. He was driving a Ford V8 truck, with the words "Peveto Mercantile Co." written or stenciled on the side of it. It was shown by the testimony of a waitress that Peveto spent the large part of the afternoon at a beer parlor. The waitress Miss Delores Brown testified that he drank some seven or eight bottles of beer. She also testified that for a short time during the afternoon he left that beer

parlor and went to another. The beer parlor was only a short distance from the viaduct, or approach to the Neches River Bridge. Late in the afternoon Peveto got in his truck and drove towards the bridge. At that time the truck was loaded with sacks of feed or grain. She testified that Peveto was then under the influence of intoxicating liquor.

Mrs. Irene Peveto, whose husband is distantly related to the defendant, testified to seeing Arlas Peveto around 4 o'clock of the afternoon in question. He was at "The Palms," a beer parlor just across the street from the "Town Tavern," where Delores Brown worked. Arlas Peveto was coming out of the building, and as he came out he bumped into her. She testified that she had seen intoxicated people, that she observed Arlas Peveto on that occasion, and that he acted like a man who had been drinking.

After the accident the Peveto truck was inspected by Mrs. Smith and another witness, at a garage in Vidor. The front end of it had been damaged, the front bumper was broken and had been removed, and there was other evidences of damage to the front of it. It was loaded with grain. Mrs. Smith testified that on the morning after the accident Peveto came down to the hospital and said that he was the party who had hit Olen, and he went in and talked with him. A younger brother and sister, who were present, as well as Mrs. Smith, testified that Olen said, "Mr. Peveto why did you hit me, my tail light was burning," and Mr. Peveto merely replyed, "I think it was as much your fault as it was mine."

At the conclusion of the plaintiffs' evidence, the defendants moved for an instructed verdict, which was overruled. The defendants offered no evidence whatever, and the case was submitted to the jury on special issues in response to which the jury found in substance that Arlas Peveto drove a Ford V8 truck into Olen Smith's Dodge sedan, resulting in the injuries from which Smith died; that Arlas Peveto at the time and place in question drove said Ford V8 truck while under the influence of intoxicating liquor, which was negligence and the proximate cause of the injury; and that the injuries to Smith were not the result of an unavoidable accident. Several issues of contributory negligence were submitted and all answered in favor of the

plaintiff. Actual damages were assessed in the amount of $4,500, for which judgment was entered.

## Opinion.

There is no merit in appellants' contentions, urged by several assignments, that the evidence did not connect Peveto with the accident. Added to the circumstances in evidence which point by reasonable inference to the fact that Peveto's truck was driven into the rear of the Olen Smith car, driving it over and fatally injuring Olen Smith, was Peveto's own admission made at the hospital. And on the issue of negligence the evidence clearly raised the issue that Peveto was under the influence of intoxicating liquor at the time of the tragic accident. The Smith car was parked in a safe position, with ample space for passage around it, its lights, front and rear, were burning, it was located on a straight bridge approach, and could be seen for a considerable distance. Others who drove by saw it and passed around it without difficulty. Why then did Peveto's truck crash into it? It is but a reasonable inference that he was not in full possession of his faculties and in condition to keep a proper lookout and to act with proper regard for his own safety and for the safety of others. True the evidence surrounding the actual collision was circumstantial. The only witness who could have told just how it happened was the defendant Arlas Peveto, himself. He sat by and heard the testimony tending to establish his negligent conduct and the fact that he was driving an automobile while under the influence of intoxicating liquor, and yet he elected to remain silent. His silence can only be explained by the reasonable inference that in the opinion of himself and his counsel, his testimony would not have helped his case. The evidence clearly supports the jury's findings and the judgment.

Appellants contend that plaintiffs' pleading is insufficient to charge the defendant Peveto with the offense of driving his automobile while intoxicated in violation of the statute, because the statute referred to was not in force at the time of the accident. Whether the pleading charged a violation of the law under the penal code is immaterial. That Peveto drove his truck while under the influence of intoxicating liquor was charged as an act of negligence proximately causing the accident. The jury so found.

It is a matter of common knowledge that intoxicated persons are wholly unfit to operate automobiles. See Southwestern Bell Telephone Co. v. Ferris, Tex. Civ.App., 89 S.W.2d 229. The tragic results of such negligent conduct are all too frequent and of too general occurrence to require proof that an intoxicated person who operates an automobile upon a public highway commits an act of negligence. And such is the case regardless of whether or not the act is denounced by statute as a penal offense. In this case the pleading and proof were sufficient to allege and establish common-law negligence proximately causing the death of Olen Smith.

A number of assignments were presented complaining of the insufficiency of the plaintiffs' petition to allege the elements of discovered peril. The point is immaterial. Recovery was not had upon the theory of discovered peril.

It is contended that no judgment should have been entered against the defendant, H. B. Jackson, because no proof whatever was offered that he was a partner or owned any interest in the Peveto Mercantile Company. Plaintiff did not have the burden of introducing proof of the partnership. She alleged it, and there was no verified denial of the allegation as required by statute. Vernon's Ann.Civ. St., art. 2010, subd. 6. Since the allegation of partnership was not denied under oath, it may be taken as admitted. International & G. N. Railway Co. v. Tisdale, 74 Tex. 8, 11 S.W. 900, 4 L.R.A. 545; Buchanan v. Edwards, Tex.Civ.App., 51 S.W. 33; Phoenix Oil Co. v. Illinois Torpedo Co., Tex.Civ. App., 261 S.W. 487; Shapleigh v. Huff, Tex.Civ.App., 294 S.W. 657; Terrell v. Wainwright, Tex.Civ.App., 87 S.W.2d 1114.

At the conclusion of the evidence the trial court announced in the presence of the jury that he intended to refuse judgment against H. B. Jackson, but would send the case to the jury as against the defendant Peveto. Later, on proper motion, the judgment was entered against both defendants. It is insisted that such pronouncement by the trial court in the presence of the jury was prejudicial. The contention is overruled. Whether the defendant Jackson was liable or not was purely a question of law, his liability being predicated solely upon his partnership in the Peveto Mercantile Company. Jackson had no other connection with the case and his rights could

not have been prejudiced by the pronouncement of the trial judge.

It is also insisted that no proof was offered that the truck was being operated in the partnership business at the time of the accident. There were some circumstances in evidence indicating that it was and the truck bore the insignia of the Peveto Mercantile Company. No explanation or proof to the contrary was offered, and the inference is that the truck was owned by the Peveto Mercantile Company, and that it was being operated by it. Globe Laundry Company v. McLean, Tex. Civ.App., 19 S.W.2d 94; Mrs. Baird's Bakery v. Davis, Tex.Civ.App., 54 S.W. 2d 1031; Claer v. Oliver, Tex.Civ.App., 62 S.W.2d 354; Weber v. Reagan, Tex. Civ.App., 91 S.W.2d 409; Younger Bros. v. Power, Tex.Civ.App., 92 S.W.2d 1147. Whether the truck was in fact owned by the Peveto Mercantile Company and was being operated in the business of the firm at the time of the accident were matters peculiarly within the knowledge of the defendants. If it was not being so operated it would have been an easy matter to offer proof to that effect. And since the defendants offered none, it is but a fair and just rule which raised the issue against them on the circumstances in evidence.

Complaint is made of the following argument of counsel: "I am going to take only a moment of your time to make just one more statement. It has been argued that the plaintiff has not presented sufficient proof upon the issues in this case, that we have not brought you other witnesses and there is some testimony about a Bravo Frederick being with the defendant Arlas Peveto at the time he ran into Charles Olen Smith's car. As a man I want to state on my honor as a man and reputation as a lawyer that we have brought you all the witnesses we can find who can shed any light on the matter. I do not know this Bravo Frederick, nor where he is. This defendant (pointing to Arlas Peveto) could have gone on the stand and told you all about it, and he has not seen fit to do so. We can not bring you the only other witness who knew about how it all happened because he, Charles Olen Smith, is dead. The only person who could have told you is Arlas Peveto, and he remains silent and refuses to tell you."

It came out in the testimony that a man named Bravo Frederick was present with Peveto at the beer parlor when he was drinking beer. Appellants insist that it was not proper for counsel to "testify" in his argument. We do not see, however, how the defendants could have been injured by the statement that counsel did not know where Bravo Frederick was. And as to the reference to defendant Peveto's failure to testify, it was legitimate argument. He sat in the courtroom and did not take the stand, as was his privilege. He is in no position to complain that counsel argued his failure to testify as a circumstance against him.

Finding no error, the judgment is affirmed.