**KIMBELL MILLING COMPANY,**
Appellant,

v.

**Anita MARCET, Individually and as Next Friend of Robert L. Marcet, A Minor, Appellee.**

No. 14813.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 17, 1969.

Rehearing Denied Jan. 14, 1970.

Groce, Hebdon, Fahey & Smith, James D. Guess, San Antonio, for appellant.

Putman & Putman, San Antonio, for appellee.

KLINGEMAN, Justice.

This is an appeal from an order overruling Kimbell Milling Company's plea of privilege in a suit by Anita Marcet, Individually and as Next Friend of Robert L. Marcet, a Minor, for damages allegedly sustained by plaintiff as a result of a vehicle-pedestrian accident in Bexar County, Texas. The parties will be referred to as they were in the trial court. Defendant, Kimbell Milling Company, filed its plea of privilege to be sued in Tarrant County where it had its principal place of business. Venue was maintained in Bexar County under Subd. 9a, Art. 1995, Vernon's Ann. Civ.St., after a non-jury trial.

No findings of fact or conclusions of law were requested of or filed by the trial court. Where no request was made for and the trial court did not make any findings of fact and conclusions of law, a reviewing court is required to presume that the trial court resolved every disputed fact issue in favor of the winning party and to consider only evidence which supports this judgment, disregarding all evidence in conflict therewith. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114 (1951); North East Texas Motor Lines v. Dickson, 148 Tex. 35, 219 S.W.2d 795, 11 A.L.R.2d 1065 (1949); Frost v. Village of Hilshire Village, 403 S.W.2d 836 (Tex.Civ.App.—Houston 1966, writ ref'd n. r. e.); Pittsburgh Plate Glass Company v. Bragg, 383 S.W.2d 623 (Tex. Civ.App.—Dallas 1964, writ dism'd).

Defendant, by its first three points of error, asserts that the trial court erred in overruling its plea of privilege because there is no evidence and insufficient evidence of any negligence on the part of the driver of the vehicle involved which proximately caused the accident in question, and that a finding that any act of negligence on the part of the driver of the vehicle involved proximately caused the accident is against the great weight and preponderance of the evidence.

The accident herein involved occurred at the intersection of Duval and Austin Streets in San Antonio, Bexar County, Texas. Plaintiff's son, Robert L. Marcet, was a minor, eighteen years of age, living at 1418 N. Pine Street, San Antonio, Texas. Robert testified that on the morning of April 1, 1968, he left his home about 7:00 in the morning to catch a bus to go to school; that he first noticed the truck in-

volved in the accident while he was on Hackberry Street; that on his route to catch the bus, he walked along the side of Duval Street in a westerly direction, and that he was walking along the side of the street because there was no sidewalk; that as he walked, the truck involved was coming up behind him and he started to trot because he figured it was about time for the bus; that as he approached a point about fifty feet east of Austin Street the truck was about even wih him; that he continued trotting along the side of Duval Street until he reached the intersection of Duval and Austin, where he stopped at the corner; that he got to the corner first, but immediately thereafter the truck stopped on Duval St., at the intersection of Duval and Austin, at a stop sign; that at such corner, there is a high curb or retaining wall, and he was standing in the street next to such curb; that it is difficult to stand on the curb because it is pretty high and he would have had to make a high back-step to get on the curb; that he was standing on the corner looking in a northerly direction up Austin Street toward the expressway where the bus was to stop; that at such time the truck was still stopped on Duval Street; that he heard the motor of the truck and felt the closeness of the truck, but before he had a chance to realize that the truck was turning and to move, the truck caught him with the back wheels of the truck pinning him between the wheels of the truck and the curb, smashing his leg; that the truck did not stop but continued going on Austin Street.

Two eyewitnesses to the accident also testified. Chester A. Moczygemba testified that on the morning of April 1, 1968, at around 7:00, he left his home to go to work, being accompanied by Gilbert Nitschke, a neighbor who worked at the same place he did; that he saw the accident which occurred at the corner of Duval and Austin Streets; that he had seen the truck involved before the accident, and had followed it for about eight blocks; that the truck was going real slow; that it

was a large tractor-trailer truck, red in color; that shortly after he made the turn from Hackberry onto Duval he noticed a boy running along the side of the street; that the boy was alongside of and sort of keeping up with the truck; that as the truck came to the intersection of Duval and Austin Streets it stopped at a stop sign; that at such time he was immediately behind the truck; that the boy was standing at the corner of Duval and Austin next to a curb; that the curb was about two feet high; that the truck made a right turn on Austin Street, but initially had to pull some to the left on Duval Street to make the turn onto Austin; that as the truck made this right turn on Austin Street the rear wheels of the truck caught the boy's leg above the knees on down and pinned him to the curb, and that the boy's leg was mashed between the curb and the wheels of the truck; that the truck did not stop; that he immediately stopped and rendered aid to the boy; that the truck did not sound its horn, or give any warning of turning; that the accident happened about 7:10 a. m.

Gilbert Nitschke, the passenger in Moczygemba's car, testified to substantially the same things as Moczygemba. The truck driver did not testify, and there is nothing in the record to indicate that he was aware of the accident.

▇ Plaintiff alleged that defendant's agent, servant, or employee was guilty of several negligent acts and omissions, each of which was alleged to be a proximate cause of the accident and the damages to plaintiff. Among the acts alleged were, failure to keep a proper lookout, making a right-hand turn too short, and making a right turn when the same could not be made in safety to pedestrians. We are of the opinion that there is evidence of probative force which would support a reasonable inference that the driver's conduct on the occasion in question was negligent in each of the above recited respects and that each of such negligent acts or omissions was a proximate cause of the accident and plain-

tiff's damages. The trial court's implied findings that the driver of the truck was guilty of one or more acts of negligence proximately causing the accident in question are sufficiently supported by the evidence.

By its last three points of error, defendant asserts that the trial court erred in overruling defendant's plea of privilege because there was no evidence and insufficient evidence to show that the vehicle in question was being driven at the time of the accident by an agent, servant, or employee in the course and scope of his employment, and that a finding that the vehicle in question was being driven at the time of the accident by an agent, servant or employee of defendant in the course of his employment is against the great weight and preponderance of the evidence.

Plaintiff in this respect relies on the "branded vehicle doctrine." This doctrine is well recognized in Texas. Some of the Texas Courts discuss such doctrine in terms of a permissive inference. This Court in Walker v. Johnston, 236 S.W.2d 534 (1951, writ dism'd), said:

"* * * There are many cases holding that where the name of a corporation or an individual is printed on the side of a truck it is sufficient to justify the inference that the corporation or individual is the owner of the truck and that its driver is the agent of the corporation or individual and was acting at the time in the course of its or his employment. J. H. Robinson Truck Lines, Inc. v. Jones, Tex.Civ.App., 139 S.W.2d 127, 129; Globe Laundry v. McLean, Tex. Civ.App., 19 S.W.2d 94, 95; Mrs. Baird's Bakery v. Davis, Tex.Civ.App., 54 S.W. 2d 1031, 1032; Freeman v. Texas Bread Co., Tex.Civ.App., 111 S.W.2d 307; Younger Bros. v. Power, Tex.Civ.App., 92 S.W.2d 1147; R. G. Duke & Son v. Burk, Tex.Civ.App., 233 S.W.2d 617; J. A. & E. D. Transport Co. v. Rusin, Tex.Civ.App., 202 S.W.2d 693; Highway Motor Freight Lines v. Slaughter, Tex. Civ.App., 84 S.W.2d 533; Austin Bros.

v. Sill, Tex.Civ.App., 83 S.W.2d 716; Claer v. Oliver, Tex.Civ.App., 62 S.W.2d 354; Harper v. Highway Motor Freight Lines, Tex.Civ.App., 89 S.W.2d 448; Roadway Express v. Gaston, Tex.Civ. App., 90 S.W.2d 874; Weber v. Reagan, Tex.Civ.App., 91 S.W.2d 409; Southern Underwriters v. Girard, Tex.Civ. App., 107 S.W.2d 775; Howell v. J. Mandelbaum & Sons, 160 Iowa 119, 140 N.W. 397; Peveto v. Smith, Tex.Civ. App., 113 S.W.2d 216, affirmed in part, 134 Tex. 308, 133 S.W.2d 572; Tyler Milk Products Co. v. Shipman, Tex.Civ. App., 129 S.W.2d 444.

"But we have been unable to find any case holding that such circumstance conclusively establishes the fact of ownership, agency and scope of employment. The firm's name being on the truck could be nothing more than a circumstance which would be sufficient to support the trier of facts in finding that the driver of a truck was the agent of the firm and was acting at the time in the course of his employment, but would not compel him to do so. It creates only an inference and not a presumption of law. 9 Blashfield's Cyclopedia of Automobile Law, § 6057, p. 370; Pozzobon v. O'Donnell, 1 Cal.App.2d 151, 36 P.2d 236; Middletown Trust Co. v. Bregman, 118 Conn. 651, 174 A. 67; McMullen v. Warren Motor Co., 174 Wash. 454, 25 P.2d 99."

See also Simpson v. Vineyard, 324 S.W.2d 276 (Tex.Civ.App.—El Paso 1959, no writ).

Other Texas cases refer to such doctrine in the terms of a rebuttable presumption. In Rodgers v. Jackson Brewing Company, 289 S.W.2d 307 (Tex.Civ.App.—Waco 1956, writ ref'd n. r.e.), the Court said:

"* * * We are aware of the rule set forth in many cases that where, in the absence of direct evidence, it is shown that the name of a person is lettered on a truck which is involved in a collision, a rebuttable presumption arises from that fact that such truck was owned by the

person whose name is so lettered upon it. However, it is well settled that such is merely a rebuttable presumption and vanishes in the face of direct and positive evidence establishing the contrary."

See Strickland Transportation Co. v. Carmona, 303 S.W.2d 851 (Tex.Civ.App.—Waco 1957, no writ); Austin Road Co. v. Willman, 303 S.W.2d 878 (Tex.Civ.App.—Fort Worth 1957, no writ); Houston News Co. v. Shavers, 64 S.W.2d 384 (Tex.Civ. App.—Waco 1933, writ ref'd); J. H. Robinson Truck Lines v. Jones, 139 S.W.2d 127 (Tex.Civ.App.—Galveston 1940, no writ).

Three persons testified as to the identity of the truck involved in the accident. Robert L. Marcet, the plaintiff, an interested witness, testified that he saw the truck which struck him and that such truck was a red truck with "Kimbell" written thereon in white letters. Mr. Moczygemba, a disinterested witness, the driver of the car that was immediately behind the truck involved in the accident and who saw the accident, testified that he saw the word "Kimbell" written on the truck on the side and on the back, that it was a big red truck with the name "Kimbell" inscribed thereon in white lettering. Gilbert Nitschke, a disinterested witness, testified substantially the same as Mr. Moczygemba.

To rebut this evidence, defendant presented the testimony of five of its employees, who were still employed by it at the time of the trial. Guadalupe Hernandez testified that on April 1, 1968, he was working for Kimbell Milling Company at its warehouse on 1503 S. Cherry Street in San Antonio, Texas; that he was employed as a receiving clerk, but that he usually opened the warehouse in the morning, and served as a dispatcher of trucks until about 7:30 a. m.; that on the morning of April 1, 1968, he dispatched only two trucks, one driven by Pascuale Aguirre going to Kerrville, Texas, which left around 6:00 in the morning, and another truck driven by John Sheffield, which was sent to Foodway No. 114, in the 3400 Block of Fredericksburg Road, and which truck left the warehouse about 7:00 a. m. He further testified that Kimbell's trucks are red, with the name "Kimbell" being written thereon in white letters. He testified that he did not direct either driver which route to take, that he did not know what route they took, and could not testify whether or not one of these trucks was at the intersection of Duval and Austin Streets on April 1, 1968, around 7:00 in the morning. He also testified that Kimbell had other warehouses in Texas, including Fort Worth, Del Rio, Austin and Tyler; that if Kimbell's trucks were dispatched from other Kimbell warehouses and went through or in San Antonio he would not know of it and could not testify whether or not there were other Kimbell trucks in and around San Antonio on the date of the accident. He testified that Kimbell's San Antonio warehouse is located about two blocks west of Hackberry Street and is in the near vicinity of the scene of the accident.

John Bean testified that he was employed by Kimbell Milling Company at their San Antonio warehouse on April 1, 1968; that he went to work around 7:00 in the morning; that at such time there were two big trucks loaded and that these two trucks went out before 8:00 in the morning, one of which was driven by Pascuale Aguirre, and the other by John Sheffield; and that those were the only two trucks that went out prior to 8:00 a. m. He stated that Kimbell has stores in other places than San Antonio and that trucks from some of these other towns sometimes come to San Antonio, and that he didn't have anything to do with the trucks from outside cities, and did not know their whereabouts. He testified that he didn't tell Aguirre and Sheffield which route to take, and he could not testify as to whether any of Kimbell's trucks were at the intersection of Duval and Austin Street on or about 7:10 on the morning of April 1, 1968.

Pascuale Aguirre testified that he was a truck driver for Kimbell and was working

for them on April 1, 1968, that on such date he drove a truck to Kerrville from Kimbell's warehouse, leaving around 6:15 in the morning, and that on the route he went he would at no time be on Duval Street or Austin Street. He testified Kimbell had a number of trucks in San Antonio, and that such trucks were red in color with the Kimbell name written thereon in white. He testified that he had worked for Kimbell a number of years, and that if he did anything wrong he probably would be fired.

John Sheffield testified that he worked for Kimbell, doing work around the warehouse, and also driving a truck; that on the morning of April 1, 1968, he got to work at about 6:30 and left the warehouse around 7:00 in a Kimbell truck to drive to Foodway No. 114 on Fredericksburg Road. He testified as to the route he drove and that on such route at no time would he be on Duval and Austin Streets. He testified that truck drivers were instructed to follow express routes.

J. W. Lynch testified that he was employed by Kimbell in their Fort Worth office and was so employed on April 1, 1968; that his office kept the record of all vehicles sold, and that thirty-four large trailers were sold by Kimbell in the period of time from February 6, 1965, to April 1, 1968; that the color of such trucks is generally red and that when they sold a vehicle with the name "Kimbell" on it they did nothing about it, and they did not attempt to repaint the vehicle or obliterate the name; that some of these trailers were sold in the San Antonio area during such period; that when they sold a vehicle they had no further control over it and that it is possible that there are a number of red trucks running around the State with the name "Kimbell" inscribed thereon, which are not owned by Kimbell. He stated that Kimbell had a number of offices in Texas besides San Antonio, including Austin, Del Rio and Fort Worth; that trucks owned by Kimbell went from Fort Worth to other towns; that he did not know whether there were any trucks owned by Kimbell at the intersection of Duval and Austin Streets on April 1, 1968, at about 7:00 in the morning.

It is the general rule that the testimony of an interested witness does no more than raise a fact issue to be determined by the trier of the facts. James T. Taylor & Son, Inc. v. Arlington Independent School Dist., 160 Tex. 617, 335 S.W.2d 371 (1960); Owen Development Company v. Calvert, 157 Tex. 212, 302 S.W.2d 640 (1957); 62 Tex.Jur.2d 373. While there are exceptions to this rule, it seems settled that where testimony comes from an interested party and it is of such a nature that it cannot readily be contradicted, if untrue, an issue relating to the credibility of the witness is presented. James T. Taylor & Son, Inc. v. Arlington Independent School Dist., supra.

The testimony of three of defendant's witnesses, to-wit, Hernandez, Bean and Lynch, at the most shows only that two trucks were dispatched out of the San Antonio warehouse on April 1, 1968, between the hours of opening and 8:00 a. m., one being driven by Aguirre, going to Kerrville, and one by Sheffield going to Foodway No. 114 on Fredericksburg Road, without any information as to what route they took. Their testimony further shows that there are other warehouses in Texas having Kimbell trucks similarly colored and lettered as the truck herein involved, and that these trucks could and sometimes did go through and into San Antonio. None of these witnesses knew whether a Kimbell truck driven by either Aguirre or Sheffield was at the intersection of Austin and Duval Streets around 7:10 on the morning of April 1, 1968, or whether either of such trucks was involved in the accident herein. None of such witnesses knew whether or not there might have been other trucks owned by Kimbell at the scene of the accident at such time. The only direct evidence that the two trucks driven by Sheffield and Aguirre were not at the scene of the accident was the testimony of such drivers themselves, who must

be considered as interested witnesses under the record. See 62 Tex.Jur.2d Witnesses § 372.

We do not regard it of great materiality in this case whether the "branded vehicle doctrine" be regarded as a permissive inference, or a rebuttable presumption. If it be regarded as a permissive inference, the trial judge, in exercising his discretion as a trier of the facts, inferentially made the finding that defendant was the owner of the truck, and that the driver was an agent, servant or employee of defendant in the course and scope of his employment at the time of the accident, and it is our duty to indulge every reasonable presumption and intendment in favor and in support of the action of the trial judge. On the other hand, if the doctrine be regarded as a rebuttable presumption, the factual situation under the record before us raises the presumption that the truck belonged to defendant and that the driver of the truck was engaged in the business of driving the truck for defendant at the time of the accident. Defendant did not present direct and positive evidence establishing the contrary, and under the evidence tendered the presumption did not vanish.

Under the record in the hearing on the plea of privilege, the implied findings of the trial court that defendant owned the vehicle involved in the accident and that the driver was using it in defendant's behalf at the time of the accident are sufficiently supported by the record.

This opinion is necessarily limited to the record before us on the hearing on the plea of privilege, as we cannot know what the evidence will be on a trial on the merits. Nor is it to be understood as holding that there is no evidence of other alleged negligent acts or omissions which were proximate causes of the accident.

All of defendant's points of error are overruled. The judgment of the trial court is affirmed.